486 So.2d 370 (1986)
Patricia SCAFIDEL
v.
Dr. Benjamin L. CRAWFORD, III, Dr. LaDon Langston & Dr. E.J. Price d/b/a Southwest Clinic for Women.
No. 55263.
Supreme Court of Mississippi.
February 26, 1986.
Rehearing Denied April 23, 1986.
T. Mack Brabham, McComb, and J. Robert Ramsay, Hattiesburg, for appellant.
*371 Jimmie B. Reynolds, Jr., Steen, Reynolds, Dalehite & Currie, Jackson, for appellees.
BEFORE PATTERSON, C.J., and SULLIVAN and ANDERSON, JJ.
PATTERSON, Chief Justice, for the Court:
Mrs. Patricia Scafidel sued Dr. Benjamin Crawford and his partners in the Circuit Court of Pike County for medical malpractice. She alleged Crawford was negligent in failing to consult a surgeon or perform immediate surgery when he discovered a pelvo-abdominal mass within her body. The jury returned a verdict in favor of Dr. Crawford, et al, and this appeal follows.
Dr. Crawford is a practicing physician in McComb, specializing in obstetrics and gynecology. Mrs. Scafidel initially went to see him on April 3, 1978, suffering from chest flutters and cramping abdominal pain. At this time he diagnosed her condition as a urinary tract infection. On April 6, 1978, she saw Crawford again, at which time she complained of chills, fever, backache and worsening abdominal pain, along with diarrhea. He performed a pelvic examination and found no pelvic or abdominal masses, but nonetheless hospitalized her at the Southwest Regional Medical Center. His admitting diagnosis was acute pyelonephritis with a strong indication of pelvic inflammatory disease. She was injected with demorral for abdominal pain, and treated with antibiotics.
By the morning of April 8, 1978, Mrs. Scafidel had developed a pelvo-abdominal mass the approximate size of a soccer ball. Crawford continued treating her with antibiotics and tentatively scheduled surgery for April 12 if she did not improve. On April 10 a barium enema was done which indicated her appendix might be involved in the infection process. Crawford then consulted with Dr. Foster Lowe on the 10th and it was his impression Mrs. Scafidel had an appendiceal abscess. Crawford stated he wanted to treat Mrs. Scafidel conservatively because of her reluctance to have surgery and her refusal to consent to blood transfusions because of her religious beliefs. Surgery was finally performed with her consent on April 12, at which time it was found she had a ruptured appendix. Mrs. Scafidel was discharged from the hospital on April 29, 1978.
Mrs. Scafidel was again admitted to the hospital in August, 1978, for surgery to lance an intra abdominal abscess. In July, 1979, she was hospitalized and underwent major surgery for intra abdominal adhesions. Then in November of 1979, she was admitted to the hospital and informed by Dr. Crawford she had a tubo-ovarian abscess, that she was probably sterile, and needed a total hysterectomy. Ultimately, after acquiring a second and third opinion, she had the hysterectomy performed in Houston, Texas, in July 1981.
Mrs. Scafidel contends Dr. Crawford was negligent in that he misdiagnosed her condition, that she had appendicitis, not a pelvic infection resulting from chronic intrinsic infection; and that her appendix ruptured on the 8th or 9th of April and surgery should have been performed immediately. She further contends delaying surgery until the 12th of April contributed to her subsequent medical problems, ultimately resulting in the hysterectomy.
The issues presented on appeal concern alleged violations of pretrial discovery rules regarding expert testimony admitted at trial.
Mrs. Scafidel propounded a set of interrogatories to Dr. Crawford requesting him to identify his experts, state the subject matter upon which they were to testify, the substance of the facts and opinions upon which the experts were expected to testify and a summary of the grounds for each opinion. Crawford answered the interrogatories, then supplemented them twice listing two experts and the details of their expected testimony. Five days before commencement of the trial, in the pretrial order, Dr. C. Foster Lowe, her surgeon, was listed as a "may call" witness. At no time prior to trial was Mrs. Scafidel advised of the subject matter to which Dr. Lowe was expected to testify, the substance of the *372 facts and opinions which he may have held, or a summary of the grounds for those opinions.
Dr. Lowe was the surgeon who performed exploratory surgery on Mrs. Scafidel in April, 1978, and removed her ruptured appendix. He was her treating physician for approximately one year after her discharge from the hospital. Dr. Lowe's testimony consisted primarily of the facts and circumstances surrounding his treatment and care of her beginning on the night of April 10, 1978, through the surgery. In sum, his management of the case during this period was to change her antibiotics to try to get her better and avoid the surgery.
The portion of his testimony which was objected to was his statement that Mrs. Scafidel was anemic. He was not, however, permitted to give an opinion as to what effect anemia has on an infection or a patient's ability to recover from an illness.
Dr. Crawford's testimony was similar in that he described the facts and circumstances surrounding his care and treatment of Mrs. Scafidel, and in the course of his treatment discovered she was anemic. Again, no opinion as to the effect of anemia was presented to the jury.
The appellant concedes Drs. Lowe and Crawford could have been called as fact witnesses to describe what their records revealed in regard to their treatment of Mrs. Scafidel. However, appellant contends both doctors' opinions that she was anemic was expert testimony as distinguished from fact testimony and should have been excluded because neither was listed as an expert, nor was the substance of their opinions revealed.
Mississippi Code Annotated, § 13-1-226(b)(4)(A)(i) (Supp. 1982), permits a party, through interrogatories, to require any party to identify the names of experts expected to be called as witnesses and to state the subject matter and the substance of the facts and opinions to which such experts are expected to testify. In the event the initial responses do not adequately divulge the names of experts and the substance of the opinions to which they are expected to testify, such party is under a duty seasonably to supplement a prior response.
This Court has interpreted this rule on previous occasions and has held that strict compliance is necessary to prevent trials from being tainted with surprise and unfair advantage. See Winston v. Cannon, 430 So.2d 413 (Miss. 1983); Square D Co. v. Edwards, 419 So.2d 1327 (Miss. 1982); Huff v. Polk, 408 So.2d 1368 (Miss. 1982); Clark v. Mississippi Power Co., 372 So.2d 1077 (Miss. 1979).
The question is whether these two fact witnesses crossed an impermissible line between fact testimony and expert opinion when they stated Mrs. Scafidel was anemic. We conclude they did not. Their opinions in this regard, according to their testimony, were acquired through their care and treatment of her during this illness. Just as they testified as fact witnesses that she had fever, chills, and diarrhea, so could they state, in our opinion, that she was anemic without becoming expert witnesses.
Assuming, arguendo, the testimony of Drs. Lowe and Crawford was error to the extent they were allowed to state Mrs. Scafidel was anemic, such was harmless because no evidence was presented to the jury of the significance of this condition. Their testimony had only minimal, if any, impact on the jury who without the benefit of medical training could not have ascertained for themselves what the consequences of her condition may have been. We therefore reject this contention.
Appellant next directs our attention to the testimony of Dr. Lamar Burrow, a pathologist who viewed tissue slides composed of sections of tissue removed from Mrs. Scafidel during her hysterectomy.
Defense counsel did not receive the slides until the day before the pretrial conference, on March 22. In the pretrial order they listed among their expert witnesses Dr. Lamar Burrow and stated tissue slides from St. Luke's Episcopal Hospital in *373 Houston, Texas, were in the process of being forwarded to Dr. Burrow for his review following which a pathology report would be prepared by him. Defense counsel reserved the right to supplement the pretrial order and their responses to interrogatories concerning the use of the pathology report at trial and the testimony of Dr. Burrow. On the morning of the trial, Mrs. Scafidel's attorneys were furnished a copy of the pathology report prepared by Dr. Burrow. Her attorneys, however, were in possession of the same tissue slides well in advance of trial.
Mrs. Scafidel objects to Dr. Burrow's testimony because he was never listed as an expert witness in the interrogatory answers, she was not informed of Dr. Burrow's opinions and bases thereof, and the pathology report prepared by Dr. Burrow was not furnished until the day of the trial.
Although it appears Dr. Crawford's conduct of not supplying Dr. Burrow's name until the pretrial order and not furnishing the pathology report until the day of the trial falls squarely within the well established rules governing conduct of trials which prohibit this type of last minute response, in this case we cannot overlook two important facts: Mrs. Scafidel's own expert had a copy of the tissue slices well in advance of trial, and prior to their receipt by Dr. Burrow. Moreover, neither party had access to the pathology report until immediately prior to the trial.
As stated in Square D Co. v. Edwards, 419 So.2d 1327, 1329 (Miss. 1982), "One of the principal reasons for permitting interrogatories for pretrial discovery of the opinion held by experts and the substance of their testimony is to prevent trial by ambush and surprise; therefore, `discovery of expert opinion must not be allowed to degenerate into a game of evasion'." [Citing Voegeli v. Lewis, 568 F.2d 89 (8th Cir.1977)].
In our opinion, because both parties had access to the tissue slides, and both came into possession of the pathology report at approximately the same time, there was no unfair advantage, surprise, or ambush at the trial.
We trust this opinion will not be construed as a retreat from our previous decisions mandating strict compliance with the rules of discovery regarding expert testimony. The facts of this case reveal the defendants submitted the requested information as soon as it came into their possession. The delayed response to interrogatories did not prejudice the plaintiff because both parties were in the same position with regard to Dr. Burrow's findings. As such, they cannot claim surprise.
The next assignment of error addresses the admissibility of a medical report prepared by Dr. Fred Brumfield of New Orleans, Louisiana, who Mrs. Scafidel visited on one occasion to obtain a second opinion regarding her hysterectomy.
Appellant urges the lower court committed reversible error in permitting the report to be admitted into evidence because it contained a statement that read, "Your doctor did a good job." As such, she contends the prejudicial effect of this document outweighed whatever probative value it contained.
In the pretrial order it was stipulated that all of Mrs. Scafidel's hospital and medical records from treating physicians were admissible and authentic. The appellant failed to exercise her opportunity to object to the medical report prepared by Dr. Brumfield in the pretrial order. That day having passed, we will not reverse on the ground one of the stipulated reports was, in her opinion, unfairly prejudicial.
Nor will we reverse on the basis that Dr. Brumfield was a consulting physician, as distinguished from a treating physician. The appellant furnished copies of Dr. Brumfield's report as a physician to the appellees. They failed to object to the admissibility of this report in the pretrial order or at the trial, but raise this issue for the first time on appeal. We will not reverse on such a questionable distinction.
Finally, appellant asserts the lower court committed reversible error in overruling *374 her motion for a judgment notwithstanding the verdict and, in the alternative, for a new trial.
Both parties presented credible expert witnesses who came to opposite conclusions on the question of whether Dr. Crawford exercised a reasonable standard of care. In considering the plaintiff's motion for a judgment notwithstanding the verdict, the court was bound to consider as true all testimony favorable to the party against whom the request was made. The record reveals there was ample evidence to support the defendants' position, therefore this question of fact was properly submitted to the jury for its determination. Gee v. Hawkins, 402 So.2d 825 (Miss. 1981); Blackwell v. Dairymen, Inc., 369 So.2d 511 (Miss. 1979).
AFFIRMED.
WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.