BARNES, J., for the Court.
 

 ¶ 1. This case comes on appeal from the Circuit Court of Washington County from a judgment of $350,000 against APAC Mississippi, Inc. (APAC) and Jose Ortega,
 
 [1]
 
 an
 
 *469
 
 APAC employee, for injuries sustained by Brenda Johnson. APAC now appeals citing several assignments of error, the combination of which, APAC asserts, should have prompted the grant of a new trial or remittitur by the trial court. Finding no error, we affirm.
 

 SUMMARY OF FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. On August 25, 2004, Johnson was driving her 1997 Chevrolet Lumina in an easterly direction on Highway 82 in Green-ville, Mississippi. At the same time, Ortega was driving a boom truck owned by APAC in a westerly direction on the same section of highway. The boom on the APAC truck came into contact with a power line and traffic signal on Highway 82. As a result, the power lines and support pole fell onto Johnson’s vehicle, causing her to spin out of control and come to rest near the median.
 

 ¶ 3. Johnson had to be removed from her vehicle with the “jaws of life,” and she was transported by ambulance to Delta Regional Medical Center. She was subsequently transported to the University Medical Center in Jackson, Mississippi for additional medical care. Johnson sustained several cuts and bruises, and it was found, after several tests, that she suffered from “fractures of the posterior neural spines at C6 and C7.” No surgery was required, but Johnson was ordered to wear a neck brace for approximately five weeks and to follow up with the Ortho Spine Clinic.
 
 [2]
 
 In January 2005, Dr. Lenard Rut-kowski performed an MRI on Johnson, who was complaining of sinus pain, and noted “no residual signal to indicate fractures of C6 and C7.” He did prescribe a TENS unit and physical therapy, which Johnson attended for two months.
 

 ¶ 4. Johnson, in the meantime, had filed a complaint on August 31, 2004, alleging negligence on the part of APAC. APAC’s initial response denied any liability. Johnson submitted her answers to the first set of interrogatories propounded by APAC on March 14, 2005. In her response to the interrogatories, Johnson did not identify any potential expert witnesses; however, in response to “Interrogatory No. 19,” she noted that Dr. Marilyn McLeod and Dr. Rutkowski had treated her for injuries related to the accident. In addition, in response to “Interrogatory No. 20,” Johnson identified Diann Morgan, a nurse practitioner with the Delta Regional Family Care Clinic, as someone who had treated her for minor illnesses in the ten years prior to the incident. Johnson’s medical records were submitted to APAC during discovery. Johnson sent a second supplementary response to the interrogatories on March 22, 2006, but she did not address those particular interrogatories discussed above.
 

 ¶ 5. On February 1, 2007, Johnson issued witness subpoenas for Morgan and Dr. McLeod. She also sent a third supplemental response to the first set of interrogatories on February 5, 2007. The supplemented response to “Interrogatory No. 5” stated:
 

 Although Plaintiff does not intend to call any experts at the trial of this matter, she does intend to call several of the Plaintiffs treating physicians and/or medical personnel, namely, Diann Morgan, a nurse practitioner, and Dr. Marilyn McLeod, the Emergency Room physician at Delta Regional Medical Center. Both of these individuals will testify re
 
 *470
 
 garding the nature, extent and severity of the injuries received by Brenda Johnson in this accident. All previous medical reports and diagnostic reports concerning their treatment of Plaintiff have previously been produced.
 

 APAC filed a motion in limine on February 26, 2007, the morning of trial, requesting the testimonies of Dr. McLeod and Morgan be excluded at trial or, in the alternative, a motion for continuance. A hearing was held immediately, and the trial judge denied the motion stating that, as the two witnesses were only going to be testifying as to facts related to their treatment of Johnson, they were not considered expert witnesses and their testimonies were admissible.
 

 ¶ 6. As APAC decided not to contest the issue of liability at trial, the only issue for the jury was the awarding of damages. The jury awarded Johnson $350,000-$12,621.34 in actual damages and $337,378.66 for pain and suffering. On March 14, 2007, APAC filed a motion for a new trial or remittitur for $275,000, asserting that the jury award was excessive in light of Johnson’s minor injuries. APAC’s motion for new trial or remittitur was denied by the circuit court. It is from the denial of its motion that APAC appeals citing several assignments of error; the combination of which, APAC asserts, should have prompted the grant of a new trial or remittitur by the trial court.
 

 ¶ 7. First, APAC maintains that its motion to strike Dr. McLeod and Morgan as witnesses should have been granted as: (1) the witnesses were improperly considered by the court to be fact "witnesses when, in fact, they were permitted to provide expert opinions over APAC’s objections; and (2) as expert witnesses, Johnson failed to disclose them in a timely manner in discovery which should have prompted exclusion of their testimonies or, in the alternative, a continuance. Next, APAC contends that permitting a jury instruction regarding the consideration of future pain and suffering was error. Finally, APAC claims that the improper redirect and closing argument by Johnson’s counsel constituted error. APAC claims that these errors should have prompted the trial judge to grant APAC’s motion for a new trial or remittitur.
 

 STANDARD OF REVIEW
 

 ¶ 8. A motion for a new trial challenges the weight of the evidence presented to the jury.
 
 Bass v. Bobo,
 
 980 So.2d 944, 950(¶ 15) (Miss.Ct.App.2007) (citation omitted). A trial judge may grant a new trial in cases where he, “in the exercise of [his] sound discretion,” regards the verdict “as being contrary to the substantial weight of the evidence.”
 
 Coho Res., Inc. v. Chapman,
 
 913 So.2d 899, 908(¶ 28) (Miss.2005). If a trial court makes a determination that an “error within the trial mechanism itself has caused a legally incorrect or unjust verdict,” then a new trial is warranted.
 
 White v. Stewman,
 
 932 So.2d 27, 33(¶ 15) (Miss.2006). Therefore, “[s]ince the determination of whether to grant or deny a new trial, on motion of a party or by order entered on the initiative of the court, is within the sound discretion of the trial court, this Court reviews such orders for abuse of discretion.”
 
 Id.
 
 at (¶ 16).
 

 ¶ 9. Pursuant to Mississippi Code Annotated section 11-1-55 (Rev.2002), a trial court has the authority to order a remittitur if it finds “that the damages are excessive ... for the reason that the jury or trier of the facts was influenced by bias, prejudice, or passion, or that the damages awarded were contrary to the overwhelming weight of credible evidence.” “Such matters are reviewed on appeal for abuse of discretion.”
 
 Cade v. Walker,
 
 771 So.2d 403, 407(¶ 11) (Miss.Ct.App.2000).
 

 I. Whether the trial court’s denial of APAC’s motion to strike Dr.
 
 *471
 
 McLeod and Morgan as witnesses or, in the alternative, to grant a continuance was reversible error.
 

 ¶ 10. APAC maintains that it was error for the trial court to allow Dr. McLeod and Morgan, the nurse practitioner, to testify at trial or, in the alternative, not to grant APAC a continuance to prepare for their testimony. APAC’s reasoning is that Dr. McLeod and Morgan gave impermissible expert testimony, and they were only disclosed as witnesses on February 1, 2007, less than one month prior to the trial date. Johnson counters that the trial judge correctly denied the motion as the two witnesses merely testified as to facts regarding their treatment of Johnson, and they were never designated as experts.
 

 ¶ 11. “The standard of review for the admission or suppression of evidence in Mississippi is abuse of discretion.”
 
 Poole v. Avara,
 
 908 So.2d 716, 721 (¶ 8) (Miss.2005) (citing
 
 Miss. Transp. Comm’n v. McLemore,
 
 868 So.2d 31, 34(¶ 4) (Miss. 2003)). Moreover, even if error is found in the “admission or exclusion of evidence,” we will not reverse the trial court’s ruling “unless the error adversely affects a substantial right of a party.”
 
 Haggerty v. Foster,
 
 838 So.2d 948, 960(¶ 35) (Miss.2002) (quoting
 
 Floyd v. City of Crystal Springs,
 
 749 So.2d 110, 113(¶ 12) (Miss.1999)). So, unless we find that a trial court’s decision on whether to exclude or admit testimony “was arbitrary and clearly erroneous, amounting to an abuse of discretion, that decision will stand.”
 
 Crane Co. v. Kitzinger,
 
 860 So.2d 1196, 1201(¶ 20) (Miss.2003) (citation omitted).
 

 A. Whether the trial court committed reversible error by classifying Dr. McLeod and Morgan as fact witnesses and allowing their testimonies.
 

 ¶ 12. On appeal, APAC argues that Dr. McLeod’s and Morgan’s statements at trial strayed into the area of expert testimony. Our courts have different standards for lay and expert testimony, the reason for which “is that expert testimony is subject to special discovery rules to ‘allow the opposing party ample opportunity to challenge the witnesses] qualifications to render such opinion before the question soliciting opinion is posed in front of the jury.’ ”
 
 Griffin v. McKenney,
 
 877 So.2d 425, 438(¶46) (Miss.Ct.App.2003) (quoting
 
 Sample v. State,
 
 643 So.2d 524, 530 (Miss.1994)). Rule 701 of the Mississippi Rules of Evidence, which presents the standard for lay testimony, states:
 

 If the witness is not testifying as an expert[,] the witness’s testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to the clear understanding of the testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.
 

 ¶ 13. In
 
 Scafidel v. Crawford,
 
 486 So.2d 370, 372 (Miss.1986), the supreme court found that the admission of the testimony of two doctors who had treated the patient in question was not error as they were only lay witnesses testifying as to the facts and circumstances surrounding their treatment of the patient. The supreme court stated:
 

 The question is whether these two fact witnesses crossed an impermissible line between fact testimony and expert opinion when they stated Mrs. Scafidel was anemic. We conclude they did not. Their opinions in this regard, according to their testimony, were acquired through their care and treatment of her during this illness. Just as they testified
 
 *472
 
 as fact witnesses that she had fever, chills, and diarrhea, so could they state, in our opinion, that she was anemic without becoming expert witnesses.
 

 Id.
 
 Further, in
 
 Foster v. Noel,
 
 715 So.2d 174, 183(¶ 54) (Miss.1998), the supreme court found that even when the treating physician did render impermissible expert testimony, that testimony “constituted harmless error” where other lay witnesses testified to essentially the same effect.
 
 Id.
 

 ¶ 14. APAC contends that Morgan’s and Dr. McLeod’s testimonies were impermissible expert testimony in support of a disputed diagnosis, Johnson’s hair-line fracture at vertebrae C6 and C7, which APAC cites as one of “the single most important issues of fact in dispute at the trial of this matter.” First, APAC argues that Morgan’s testimony regarding Johnson’s alleged fracture of her C-6 and C-7 vertebrae was inadmissable as expert testimony. On direct examination, counsel for Johnson asked:
 

 MR. MANSOUR: Okay. Did you become aware of what the diagnosis was?
 

 MORGAN: I did, because I requested the medical records from University Medical Center, as well as the emergency room at Delta Regional Medical Center, and in reviewing those medical records ... both did indicate that she had a fracture, or a broken area, at C-6, C-7, which if you’ll look right there, the bone that you look and point to on your neck, that is what we call Cervical 7 vertebra, and according to the records, those were — -those both — both of those were broken.
 

 MR. MANSOUR: C-6 and C-7, are they medical terms for neck bones? Is that correct?
 

 MORGAN: Yes; that’s correct.
 

 Although APAC made a timely objection to these comments, we conclude that this testimony by Morgan merely provided information that she had gathered during her treatment of Johnson. APAC further contends that Dr. McLeod’s testimony and her review of photographs of Johnson’s injuries, which were admitted into evidence, were also impermissible expert testimony. Upon review, we find no indication that Dr. McLeod’s testimony was expert in nature. She merely examined the photographs in order to explain her initial diagnosis of Johnson immediately after the injury occurred. In fact, when Dr. McLeod was asked questions by APAC regarding tests performed on Johnson months later and which referenced Johnson’s fracture, she acknowledged that any testimony of that nature would be outside her scope of knowledge and did not answer.
 

 ¶ 15. In
 
 Griffin,
 
 the supreme court held “that a treating physician could testify as a lay witness about the facts and circumstances surrounding the care and treatment of the patient[,] ... may ... describe what his records about the patient reveal[,] ... [and may] state opinions on what conditions the patient was suffering from if the opinion was acquired during the care and treatment of the patient, and if no evidence was presented to the jury of the significance of the condition.”
 
 Griffin,
 
 877 So.2d at 439-40(¶50) (citing
 
 Scafidel,
 
 486 So.2d at 372). Therefore, we find that neither Dr. McLeod’s nor Morgan’s testimony constituted impermissible expert testimony. Furthermore, even if the testimony was expert in nature, we find the admission of such testimony amounts to no more than harmless error as the medical records were already introduced into evidence without objection by
 
 *473
 
 APAC.
 
 [3]
 

 B. Whether the trial court erred in not excluding the testimonies of Dr. McLeod and Morgan as they were not identified as expert witnesses until twenty days before trial.
 

 ¶ 16. As was already stated, Johnson never disclosed any expert witnesses during discovery. She merely stated in her supplemental response that she would be calling Dr. McLeod and Morgan as factual witnesses. APAC claims that Dr. McLeod and Morgan were, in fact, testifying as expert witnesses, and that their inclusion was a violation of Mississippi Rule of Civil Procedure 26(b)(4)(A)(i) which states:
 

 A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert -witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.
 

 ¶ 17. The purpose of the discovery rules promulgated by the Mississippi Supreme Court is that parties might “avoid trial by ambush” and have “a reasonable time to prepare for trial.”
 
 Congleton v. Shellfish Culture, Inc.,
 
 807 So.2d 492, 496(¶ 12) (Miss.Ct.App.2002) (citations omitted). This is particularly true “where the interrogatory asks for disclosure of expert witnesses.”
 
 Harris v. Gen. Host Corp.,
 
 503 So.2d 795, 797 (Miss.1986). The supreme court has deemed it “inherently unfair and a violation of our rules of civil procedure for a plaintiff’ who has violated the discovery rules “to appear at trial with experts whose opinions have not been properly disclosed to the defendants.”
 
 Banks v. Hill,
 
 978 So.2d 663, 666(¶ 12) (Miss.2008). APAC contends that Dr. McLeod and Morgan were permitted to testify as to other doctors’ medical diagnoses and opinions; therefore, their testimonies were, in fact, expert in nature. Consequently, Johnson’s failure to include them as experts in the interrogatories was a discovery violation, and their testimonies should have been excluded.
 

 ¶ 18. “Rule 26(f) of the Mississippi Rules of Civil Procedure requires that all interrogatory responses be seasonably supplemented.”
 
 Motorola Commc’ns & Elecs., Inc. v. Wilkerson,
 
 555 So.2d 713, 717 (Miss.1989). The trial court must determine whether a response is “seasonable” on a case-by-case basis by “looking at the totality of the circumstances surrounding the supplemental information the offering party seeks to admit.”
 
 Buchanan v. Ameristar Casino Vicksburg, Inc.,
 
 957 So.2d 969, 973(¶ 9) (Miss.2007) (citations omitted). Nevertheless, a delayed response to interrogatories will not be grounds for exclusion of testimony in cases where a party is not prejudiced by the delay and it does not result in an unfair advantage or surprise.
 
 See Scafidel,
 
 486 So.2d at 373 (no error in allowing testimony of a witness who was not disclosed until the pretrial order and whose tissue slides were not available to either party until the day of trial).
 

 ¶ 19. As we have found that Dr. McLeod and Morgan did not give impermissible expert testimony, we find that the February 2007 supplemental response to
 
 *474
 
 “Interrogatory No. 5” was not a discovery violation in regard to Rule 26. Further, both witnesses were identified in the March 2005 discovery responses as persons with knowledge of Johnson’s medical condition — Morgan for minor illnesses and Dr. McLeod for injuries related to the accident at issue. In addition, although Morgan was not included in the response to “Interrogatory No. 19” as having treated Johnson for any injuries related to the accident, the record reflects that in Johnson’s November 2005 deposition, she did mention Morgan’s treatment of her following the accident. Counsel for Johnson read portions of the deposition during the hearing on APAC’s motion to exclude:
 

 MR. MANSOUR: [I]n the deposition of ... my client Ms. Johnson, on Page 48, she was asked ... Who was the nurse.
 

 She earlier said, I was seeing — you know, when I was able to get up and go to the doctor, she sent me to him because I was having real bad headaches, and when I would lean over, and I would be about to fall over, or if I’m looking — she would describe her symptoms — so she sent me to him for an MRI. That was the first time she mentioned it.
 

 And who was the first person you mentioned you saw? And she answered, Diann Morgan.
 

 Then we go to Page 56 of the deposition and she [counsel for APAC] says, So right now you’re not currently seeing any doctor for anything. No, I see Ms. Morgan, and she’s wanting to send me to somebody else.
 

 Again, on Page 57, Ms. Bermel, “It may not be but just in case Ms. Morgan? That’s your nurse practitioner? “Right.”
 

 Page 61, you’re talking — “Question: You’re talking about the pills on your night stand that help you sleep and whatnot. Are you talking about prescription medication?
 

 “Answer: Ms. Morgan had given me some Lorcet, and she wouldn’t refill them. She told me she didn’t want me to get dependent on them.”
 

 That’s about the fifth time she’s mentioned Ms. Morgan.
 

 Again, on Page 63 of the deposition. Have you told any of the doctors about your arm — question talking about her arm being sore.
 

 “I told Ms. Morgan. That’s why she wanted to send me to see what else, you know, what they can do besides give me a lot of drugs.”
 

 Again, on page 64. I did — “Have you applied for disability?”
 

 “I did, but I was denied. She told me to wait until she sent me to — ”
 

 “Question: Who is she?”
 

 “Answer: Ms. Morgan. She told me to wait till [sic] she sent me to another doctor.”
 

 While Johnson failed to supplement her response to “Interrogatory No. 19” regarding Moi'gan, her deposition clearly identified Morgan as someone who treated her after her injury. As this provided APAC reasonable notice as to Morgan’s treatment of Johnson, the admission of Morgan’s testimony does not constitute a “trial by ambush” as argued by APAC. Therefore, we find no abuse of discretion in the trial court’s admission of Dr. McLeod’s and Morgan’s testimonies under the circumstances of this case.
 

 C. Whether the trial court erred in not granting APAC’s motion for a continuance.
 

 ¶ 20. APAC also asserts that it was error for the trial court not to grant its
 
 *475
 
 motion for a continuance which, APAC claims, should have included sanctions against Johnson for APAC’s reasonable expenses and attorney’s fees. Johnson failed to address this issue in her response.
 

 ¶ 21. This Court will only reverse a trial court’s denial of a motion for continuance when the denial appears to have resulted in manifest injustice.
 
 Jacobs v. State,
 
 870 So.2d 1202, 1205(¶ 7) (Miss.2004) (citing
 
 Johnson v. State,
 
 681 So.2d 185, 189 (Miss.1994)). APAC contends that the late disclosure of the expert witnesses was not adequate time to “obtain recoi’ds, retain an expert in rebuttal, allow that expert time to review the file and records, formulate a response and then for [the] Defendants] to timely disclose a rebuttal expert’s opinion.” However, although requesting a continuance as an alternative remedy, APAC asserts that a continuance would not be the proper remedy based on the supreme court’s holding in
 
 Huff v. Polk,
 
 408 So.2d 1368, 1371 (Miss.1982) (a trial court’s offer of a continuance may create a situation where either party could obtain a delay in trial by “not conforming to the ... discovery rules until the morning of the trial,” knowing that a continuance would be granted).
 
 See also Int’l Paper Co. v. Townsend,
 
 961 So.2d 741, 756(¶ 32) (Miss.Ct.App.2007) (trial court erred in not granting a continuance because “the confused circumstances that ensued following the tardy [expert witness] designation ... unfairly tilt[ed] the playing field”).
 

 ¶ 22. As we have already determined that Dr. McCleod and Morgan were not expert witnesses, the rule regarding the timely designation of an expert witness does not apply. Therefore, to determine whether there was a manifest injustice in not granting the continuance, we must determine whether the admission of their testimonies prejudiced APAC.
 
 See Jacobs,
 
 870 So.2d at 1205-06(¶ 7).
 

 ¶ 23. APAC was aware that Dr. McLeod and Morgan were persons who could be called to testify on Johnson’s behalf. They were listed in the March 2005 original set of interrogatories, albeit not as expert witnesses. Plus the two witnesses merely testified to information contained in the medical records, which APAC had obtained during discovery. While APAC contended that they did not receive Morgan’s medical records, the records were contained in those obtained from Delta Regional Medical Center. Therefore, APAC did have Morgan’s records; they were just unaware that those were specifically from Morgan. Johnson also provided APAC with an opinion letter from Morgan, which was dated February 19, 2007, detailing her treatment of Johnson.
 

 ¶ 24. Under the circumstances, we do not find an abuse of discretion in failing to grant a continuance and impose sanctions upon Johnson. “[Sanctions are not to be imposed per se for every discovery violation, and a determination of whether to impose such a sanction is ordinarily vested in the sound discretion of the trial judge.”
 
 Ladner v. Ladner,
 
 436 So.2d 1366, 1371 (Miss.1983). Both witnesses were known to APAC during the discovery phase, and neither one provided any testimony that would have warranted their exclusion. We find no merit to this assignment of error.
 

 II. Whether the trial court erred in allowing jury instruction No. 6(P-2) as there was no credible proof of future pain and suffering.
 

 ¶ 25. APAC claims that the trial court should not have allowed a jury instruction which instructed the jury that they could award damages for future pain and suffering as there was no credible
 
 *476
 
 evidence to support such a theory. Jury instruction No. 6(P-2) reads in part:
 

 You may consider the following factors to determine the amount of damages, if any, to award as may be shown by a preponderance of the evidence:
 

 (1) The type of injuries to the Plaintiff, Brenda K. Brown Johnson, if any, and their duration;
 

 (2) Pain, suffering, and resulting mental anguish, past, present, and future, suffered by the Plaintiff, Brenda K. Brown Johnson, if any; and
 

 (3) Reasonable and necessary medical expenses incurred by the Plaintiff, Brenda K. Brown Johnson.
 

 APAC asserts that the evidence showed that Johnson had not received medical care in two years in relation to the injuries sustained in the accident. However, evidence was also presented and was properly submitted to the jury for its consideration that Johnson continued to suffer, both physically and mentally.
 

 ¶ 26. “This Court does not examine jury instructions in isolation; ‘rather, they are read as a whole to determine if the jury was properly instructed.’ ”
 
 Illinois Cent. R.R. v. Clinton,
 
 727 So.2d 731, 736(¶ 15) (Miss.Ct.App.1998) (citing
 
 Boone v. Wal-Mart Stores, Inc.,
 
 680 So.2d 844, 845 (Miss.1996)). Parties have the right to “embody their theoi'ies of the case in the jury instructions provided there is testimony to support it[.]”
 
 Reese v. Summers,
 
 792 So.2d 992, 994(¶4) (Miss.2001). We find that the evidence presented was sufficient to warrant the instruction and that the jury in this instance was given proper direction in order to render a fair verdict. Therefore, we find no reversible error in the allowance of the jury instruction in question.
 

 III. Whether the trial court erred in overruling APAC’s objection to Johnson’s counsel’s improper redirect.
 

 ¶ 27. APAC argues that the trial court erred in allowing counsel for Johnson to ask Johnson questions regarding her alleged pain and suffering during redirect examination, as the line of questioning was outside the scope of APAC’s cross-examination. Johnson responded that APAC did cross-examine her with respect to future pain and suffering, including ongoing mental anguish.
 

 ¶ 28. “The redirect examination of witnesses rests lai'gely in the discretion of the trial court.”
 
 Cole v. Tuttos,
 
 228 Miss. 815, 821, 90 So.2d 32, 35 (1956). However, questioning during “redirect examination should generally be limited to matters brought out during cross-examination.”
 
 Bowman v. CSX Transp., Inc.,
 
 931 So.2d 644, 664(¶ 81) (Miss.Ct.App.2006) (citing
 
 Hughes v. State,
 
 735 So.2d 238, 269 (¶ 130) (Miss.1999)).
 

 ¶ 29. During cross-examination, counsel for APAC specifically asked Johnson about the mental suffering that she claimed she still had, as follows:
 

 Q. Ms. Johnson, I’d like to ask you a few questions, too. You were just talking about you were sometimes scared to drive places with people, or even ride with some people, and driving bothers you sometimes, and that’s causing you mental problems.
 

 A. No.
 

 Q. Well, let me—
 

 A. I said I do drive, but when I’m driving or when some — I don’t drive as much as I used to. I don’t take myself places like I — just jump in the car and say I’m going. I ride with my children, or with my husband, or whoever, and I don’t like to drive beside big cars, big trucks, or close to the curb, and it has — does
 
 *477
 
 bother me. I want them, you know, to go the speed limit, you know, or below the speed limit.
 

 Q. Are you claiming that that’s mental-type suffering? Is that what you are saying?
 

 A. To me, yes, it is.
 

 Counsel also questioned Johnson about her deposition and her testimony regarding any permanent impairment, as follows:
 

 Q.... Did you not answer no when you were asked several times by Ms. Bermel did you have any permanent impairment or permanent restrictions on your activity, and you said no? You mentioned the doctors hadn’t told you that. If you need to elaborate, yes, ma’am.
 

 A. No, the doctor had not — a doctor has not told me that now, but me being me, and I know myself, my pain is ongoing. It has not stopped. She asked me the question was that — did I have any — was I having any pain at that túne. That time had done passed from then. If you have pain today, it don’t mean you’re not going to have pain tomorrow. Now, that’s the way I took the question.
 

 ¶ 30. We find that APAC sufficiently addressed the topic of Johnson’s alleged pain and suffering to allow the line of questioning on redirect. We find no error in the trial court's overruling of APAC’s objection to the redirect questioning. This assignment of error is without merit.
 

 IV. Whether the trial court erred in not granting APAC’s motion for a new trial as Johnson’s closing arguments were improper and misled the jury.
 

 ¶ 31. The purpose of closing arguments is to aid the jury in evaluating and applying the evidence, and any “appeals to passion or prejudice are improper and should not be allowed.”
 
 Woods v. Burns,
 
 797 So.2d 331, 334(¶ 7) (Miss.Ct.App.2001) (quoting
 
 Shell Oil Co. v. Pou,
 
 204 So.2d 155, 157 (Miss.1967)). The Mississippi Supreme Court has held:
 

 While an attorney making a closing argument may not make remarks which are unfairly calculated to arouse passion or prejudice, and while we do not condone appeals to sectional prejudices of the jury, the control of such argument is left largely to the discretion of the trial judge, who is in a much better position to observe and determine what is improper.
 

 Kroger Co. v. Scott,
 
 809 So.2d 679, 686(¶ 17) (Miss.Ct.App.2001) (quoting
 
 James W. Sessums Timber Co., Inc. v. McDaniel,
 
 635 So.2d 875, 882 (Miss.1994)).
 

 ¶ 32. APAC alleges that Johnson’s counsel made improper comments at beginning of his closing statements which constituted error and misled the jury. Counsel for Johnson stated:
 

 I submit to you that we would not even be here at all if the corporation, APAC, and Mr. Ortega had in a meaningful way apologized, said they’re sorry and followed up on it. Brenda and Fred do not want to be here. They didn’t want to file this lawsuit, but they have to protect the interests of their family, their children. They provide for each other, you heard, so I submit to you we would not be here if we had had a mere apology. That’s all. That’s all....
 

 We agree that counsel’s comments regarding an apology were not proper. However, APAC made a contemporaneous objection at trial, which was sustained by trial judge who instructed the jury to disregard counsel’s comments regarding the apology. “Generally, when an objection is sustained by the judge due to unacceptable state-
 
 *478
 
 merits by an attorney or a witness, and the jury is instructed to ignore such statements or testimony, an appellate court will not find error.”
 
 Wright v. State,
 
 805 So.2d 577, 581(¶ 12) (Miss.Ct.App.2001). Only when the effect of the statement is so prejudicial that “no amount of subsequent admonition from the trial judge would be likely to eradicate from the jury’s mind the prejudicial effect, [will] we reverse^]”
 
 Id.
 
 We find that the closing statements by Johnson’s counsel did not rise to this level; therefore, we find that the improper comments were harmless error.
 

 ¶ 33. APAC also contests that several other portions of Johnson’s closing statements constituted plain error. In order to determine whether plain error exists, we must ascertain “whether there is an error that is some deviation from a legal rule, whether that error is plain, clear or obvious, and whether the error is prejudicial in its effect upon the outcome of the trial court proceedings.”
 
 Taylor v. State,
 
 754 So.2d 598, 603(¶ 11) (Miss.Ct.App.2000). For example, APAC says that Johnson should not have made a negative inference as to why Dr. Rutkowski, whose examination of Johnson did not reflect evidence of a fracture, was not called as a 'witness. APAC also directs this Court to other specific instances; however, we observe that after its initial objection, which we have already addressed, APAC made no further objections during the closing arguments. “Failure to raise a contemporaneous objection constitutes a waiver of the issue on appeal.”
 
 Kroger Co.,
 
 809 So.2d at 686(¶ 18). In its brief, APAC reasons that continual objections to improper comments would have been detrimental to their defense, and this Court should deem Johnson’s closing arguments to be “wholesale prejudicial error.” We find this argument unpersuasive. We cannot see where further objections would have prejudiced APAC in this regard, nor do we find that Johnson’s closing arguments affected the substantive rights of APAC.
 
 See Taylor,
 
 754 So.2d at 603(¶ 11). Consequently, we find APAC’s further assignments of error in regard to the closing arguments are waived.
 

 V. Whether the trial court erred in not granting a new trial or remit-titur.
 

 ¶ 34. The Mississippi Supreme Court has held that:
 

 Where an appellant challenges a jury verdict as being against the overwhelming weight of the evidence or the product of bias, prejudice or improper passion, this Coui't will show great deference to the jury verdict by resolving all conflicts in the evidence and every permissible inference from the evidence in the appellee’s favor.
 

 Wal-Mart Stores, Inc. v. Johnson,
 
 807 So.2d 382, 389(¶16) (Miss.2001). Therefore, this Court will not set aside a jury verdict unless “the jury was improperly instructed, misled, confused, or ignore[d] the weight of the evidence.”
 
 Jackson ex rel. Heirs of Jackson v. Daley,
 
 739 So.2d 1031, 1039(¶ 28) (Miss.1999). We find that the jury award was supported by the evidence presented; therefore, the trial court did not err by denying APAC’s motion for a new trial or remittitur.
 

 ¶ 35. APAC claims that the trial court erred in not granting a remitti-tur and requests that this Court suggest a remittitur. Mississippi Code Annotated section 11-1-55 provides the standard for when a remittitur, or additur, for damages is appropriate. That statute states:
 

 The supreme court or any other court of record in a case in which money damages were awarded may overrule a motion for new trial or affirm on direct or cross[-]appeal, upon condition of an addi-tur or remittitur, if the court finds that
 
 *479
 
 the damages are excessive or inadequate for the reason that the jury or trier of the facts was influenced by bias, prejudice, or passion, or that the damages awarded were contrary to the overwhelming weight of credible evidence. If such additur or remittitur be not accepted!,] then the court may direct a new trial on damages only. If the addi-tur or remittitur is accepted and the other party perfects a direct appeal, then the party accepting the additur or remittitur shall have the right to cross[-]appeal for the purpose of reversing the action of the court in regard to the additur or remittitur.
 

 Id.
 
 Whether a jury award is excessive is determined on a case-by-case basis, and this Court will not disturb a jury award unless the amount, in comparison to the actual damages, “shocks the conscience” of the court.
 
 Entergy Miss., Inc. v. Bolden,
 
 854 So.2d 1051, 1058(¶ 20) (Miss.2003). In other words, the question is whether the verdict is “so excessive or inadequate as ... to indicate bias, passion and prejudice on the part of the jury, or [did] the jury fail[] to respond to reason.”
 
 Walker v. Gann,
 
 955 So.2d 920, 931(¶38) (Miss.Ct.App.2007) (citation omitted).
 

 ¶ 36. APAC stated at trial that Johnson should only be awarded approximately $20,000; Johnson suggested a damage award of $400,000 to $600,000. The jury awarded Johnson $350,000 in damages, and APAC submits that this award, which was approximately 27.7 times the actual medical costs of $12,621.34 that Johnson incurred, was excessive and not supported by the evidence. APAC supports its contention by citing to
 
 Stringer v. Crowson,
 
 797 So.2d 368 (Miss.Ct.App.2001), a ease in which this Court upheld a trial court’s remittitur of $7,500, from a jury verdict of $30,000. The facts in that case showed that Stringer, who did not seek medical treatment until six days after her accident, suffered minimal injuries, missed no work due to her injuries, and was able to conduct a normal life.
 
 Id.
 
 at 369(¶ 2), 371(¶ 8). In addition, Stringer only incurred approximately $500 in medical expenses.
 
 Id.
 
 at 370(¶ 2).
 

 ¶ 37. That is not the case here. Johnson had to be pulled from her car with the' “jaws of life,” was sent by ambulance to the University Medical Center suffering from fractures in her vertebrae, and wore a neck brace for at least five weeks. Johnson testified that she has experienced ongoing neck pain, has had trouble sleeping, and has been on some form of pain medication ever since the accident — both over-the-counter and prescription. Further, Johnson stated that she had to decrease her participation in several activities — attending college, being a band booster (i.e., assisting the local high school band with fund raisers, ordering t-shirts, chaperoning band trips), and taking care of her grandchild — due to the pain she was experiencing.
 

 ¶ 38. As to the amount of damages, we find the award of 27.7 times the amount of medical expenses does not raise an automatic presumption that the award was excessive. “Due to the uncertainty of the monetary value placed on pain and suffering and future damages, [this Court] ha[s] affirmed damages up to fifty-one times the actual damages shown.”
 
 Kroger Co.,
 
 809 So.2d at 684(¶ 11) (citations omitted). Although we recognize that “the sky is not the limit with regard to jury verdicts,” we afford a jury “broad leeway” when it comes to an award of damages.
 
 Cade,
 
 771 So.2d at 410(¶ 20).
 

 ¶ 39. We find that the evidence of Johnson’s fractured vertebrae, ongoing pain, and limitation of her former activities does not warrant setting aside the jury verdict as “so excessive ... to indicate bias, pas
 
 *480
 
 sion and prejudice on the part of the jury[.]”
 
 See Walker,
 
 955 So.2d at 931(¶ 38). Therefore, we find that the trial court did not err in denying APAC a new trial or remittitur.
 

 ¶ 40. THE JUDGMENT OF THE CIRCUIT COURT OF WASHINGTON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, ISHEE AND ROBERTS, JJ., CONCUR. CARLTON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. MAXWELL, J., NOT PARTICIPATING.
 

 [1]
 

 . As APAC represented Ortega at trial, we will collectively reference him with APAC, where
 
 *469
 
 appropriate.
 

 [2]
 

 . Johnson testified that she wore the collar until the first of November (approximately eight weeks).
 

 [3]
 

 . Exhibit P-7 introduced into evidence at trial, without objection, contained a report from radiologist Dr. Allen Yates at Delta Regional Medical Center which stated that Johnson had "distracted fractures of the posterior neural spines at C6 and
 
 Cl.”
 
 It also noted that the details of this report were personally communicated to Dr. McLeod.