CHANDLER, Justice,
concurring in part and in result.
¶ 22. The majority holds that Claire’s pediatrician, Dr. Dupont, could not testify to the diagnosis she had reached during her care and treatment of Claire because she had not been designated as an expert witness. Yet the majority recognizes that a treating physician can testify as a lay witness “regarding; 1) ‘the facts and circumstances surrounding the care and treatment of the patient’; 2) ‘what his records about the patient reveal’; and 3) ‘what conditions the patient was suffering from if the opinion was acquired during the care and treatment of the patient.’ ” Maj. Op. at ¶ 8 (quoting Griffin v. McKenney, 877 So.2d 425, 439-40 (citing Scafidel v. Crawford, 486 So.2d 370, 372 (Miss.1986)). Because Dr. Dupont’s diagnosis of sexual abuse was made during her care and treatment of Claire, it was a fact to which Dr. Dupont could testify without having been designated as an expert witness. I would find no error in the admission of Dr. Dupont’s testimony; therefore, I concur in part and in the result.
¶ 23. The distinction between lay and expert testimony is vital because expert testimony is subject to special discovery rules to allow the opposing party an opportunity to challenge the expert’s qualifications. Sample v. State, 643 So.2d 524, 530 (Miss.1994); see M.R.C.P. 26(b)(4) (civil cases); URCCC 9.04(A)(4) (criminal cases). It is well-established in this Court’s jurisprudence that treating physicians may testify as lay witnesses regarding their care and treatment of patients, including a diagnosis reached in the course *1051 of treatment, but may not testify to standards of care or causation, or use their expertise to explain the significance of a diagnosis or answer hypothetical questions. In Scafidel v. Crawford, 486 So.2d 370, 372 (Miss.1986), Scafidel’s treating physicians testified as lay witnesses that, in the course of treatment, she had been diagnosed with anemia. Neither physician was permitted to testify about the effects of anemia. Id. Because the physicians had acquired their opinions that Scafidel was anemic during her care and treatment and had not explained how her anemia was significant to the case, the Court held that their testimony had not crossed the “impermissible line between fact testimony and expert opinion.” Id.
¶ 24. In Foster v. Noel, 715 So.2d 174, 178 (Miss.1998), the trial court allowed Noel’s doctor to give lay testimony about Noel’s care and treatment on the night of her false arrest. Id. Noel’s doctor testified that Noel had a preexisting condition of depression which had been aggravated by the false arrest. Id. This Court held that the physician’s “revelation that Noel had a pre-existing condition did not constitute impermissible expert opinion, as he did not testify about the significance of her depression and the effect the acute anxiety she suffered as a result of being arrested would have on her condition in the future.” Id. However, the treating physician had rendered improper expert testimony by stating that Noel’s depression had been aggravated by the false arrest. Id. That testimony constituted inadmissible expert testimony because it explained how Noel’s depression was significant to the case. Id.
¶ 25. The Court of Appeals relied on Scafidel and Foster in Griffin v. McKenney, 877 So.2d 425 (Miss.Ct.App.2003). Griffin sued his treating physician, Dr. McKenney, for medical malpractice. Id. at 429. Although Dr. McKenney had not been designated as an expert witness, he gave detailed medical testimony explaining his treatment of Griffin. Id. at 439. The Court of Appeals held that Dr. McKenney did not have to have been designated as an expert to render this testimony because it “was solely explanatory of Dr. McKenney’s treatment of [Griffin] and of his records and nursing records about [Griffin]’s care.” Id. at 440. However, the Court of Appeals held that Dr. McKenney “stray[ed] into the realm of expert testimony” by rendering medical opinions in response to hypothetical questions. Id. at 440^1. In other words, Dr. McKenney was permitted as a lay witness to testify to the historical facts of the medical impressions and opinions he had formed in the course of his treatment of Griffin, but could not elaborate beyond his perceptions formed at that time.
¶ 26. The Court of Appeals applied the same reasoning in the personal-injury case of APAC Mississippi, Inc. v. Johnson, 15 So.3d 465 (Miss.Ct.App.2009). To establish her injuries, Johnson called a nurse practitioner and a physician who had treated her after the accident. Neither had been designated as an expert witness. Id. at 469-70. The nurse practitioner testified from Johnson’s medical records that Johnson had a hairline fracture of her cervical vertebrae, and the physician reviewed photographs of Johnson’s injuries and explained her diagnosis of Johnson. Id. at 472. The Court of Appeals found that the witnesses’ testimony had been confined to the facts and circumstances surrounding Johnson’s care and treatment, what the medical records revealed, and diagnostic opinions acquired during Johnson’s care and treatment. Id. The Court of Appeals held that neither witness had rendered impermissible expert testimony. Id.
¶ 27. These decisions provide insight into the dividing line between lay and ex *1052 pert testimony by a treating physician. “Typically, an expert witness is an ‘outsider’ to the case who evaluates the evidence in an attempt to explain it to the jury.” Crist v. Loyacono, 65 So.3d 837, 844 (Miss.2011). “Before experts may deliver opinions to the jury, experts must be vetted by the court and must satisfy certain criteria.” Id. “By contrast, a fact witness may be virtually any competent person whose testimony is based on personal knowledge.” Id. (citing M.R.E. 601); see M.R.E. 602 (a person must have personal knowledge of a matter to testify).
¶ 28. Unlike a typical expert witness, a treating physician is not an outsider to the case. When a treating physician testifies about a patient’s care and treatment, the medical records documenting that care and treatment, and diagnoses formed in the course of the patient’s care and treatment, the treating physician is testifying based on personal knowledge and is properly deemed a fact witness. Scafidel, 486 So.2d at 372. In contrast, a medical expert is called not to testify about historical facts personally observed, but to offer opinions or other testimony about the case from the perspective of an uninvolved third party possessing specialized knowledge helpful to the jury’s determination of the issues. M.R.E. 702. A treating physician must'be designated as an expert if the treating physician goes beyond historical facts personally observed and “evaluates the evidence in an attempt to explain it to the jury.” Crist, 65 So.3d at 844. Therefore, our precedent forbids treating physicians not designated as experts from testifying to standards of care, causation, or using their expertise to explain the significance of a diagnosis or answer hypothetical questions.[39] Foster, 715 So.2d at 178; Scafidel, 486 So.2d at 372; APAC Mississippi, 15 So.3d at 472; Griffin, 877 So.2d at 440-41.
¶ 29. Dr. Dupont testified that she was Claire’s pediatrician and that she had examined Claire shortly after the allegations of abuse arose. Dr. Dupont testified that she performed an external superficial exam on Claire and that she had no apparent genital injury or abnormality. Based on the physical exam and patient history, Dr. Dupont testified that her diagnosis was sexual abuse. As a treating physician testifying as a lay witness, Dr. Dupont was permitted to testify to “what conditions the patient was suffering from if the opinion was acquired during the care and treatment of the patient.” Griffin, 877 So.2d at 439-40. Plainly, Dr. Dupont’s diagnosis was made in the course of her care and treatment of Claire. Therefore, the trial court properly allowed her to render this testimony as a lay witness. See id. While the majority finds that the trial court’s ruling was error, I would find no error in the admission of Dr. Dupont’s testimony. Therefore, I concur in part and in the result.
KING, J., JOINS THIS OPINION.

. This Court also has applied this general analysis in cases involving fact witnesses possessing expertise of the nonmedical variety. See Quitman County v. State, 910 So.2d 1032, 1045 (Miss.2005) (circuit judges were permitted as lay witnesses to give their personal observations on how the county’s public defender system worked); Langston v. Kidder, 670 So.2d 1, 4 (Miss.1995) (a fact witness's opinion on industry standards was derived from specialized knowledge; therefore, it was subject to expert disclosure rules); see also Mitchell v. Barnes, 96 So.3d 771, 779 (Miss.Ct.App.2012) (a police officer who had not personally observed the subject accident could not give opinions on speed or driver negligence without having been designated as an expert).