402 So.2d 825 (1981)
Charles W. GEE
v.
Charles H. HAWKINS, Sr., d/b/a Mid-State Motor Company.
No. 52778.
Supreme Court of Mississippi.
August 12, 1981.
Franklin J. George, Grenada, for appellant.
Jay Gore, III, Gore & Gore, Grenada, for appellee.
Before PATTERSON, C.J., and BROOM and BOWLING, JJ.
BOWLING, Justice, for the Court:
In this appeal Charles W. Gee, appellant, defendant below, contends that the lower court erroneously granted appellee, Charles H. Hawkins, Sr., plaintiff below, a judgment notwithstanding the unanimous verdict *826 of the jury for appellant Gee. The case comes from the Circuit Court of Grenada County.
Hawkins filed his suit against Gee attempting to collect the principal amount of a post-dated check given by Gee to Hawkins on July 7, 1978, but dated August 22, 1978. The sole defense advanced by Gee was that there was no consideration for the instrument due to the fact that the transaction giving rise to the check was handled by Hawkins contrary to the agreement of the parties.
Testimony was received by the court and jury only from plaintiff Hawkins and defendant Gee. Hawkins testified that he was the owner of Mid-State Motor Company of Kosciusko, Mississippi, which company was a retail seller of trucks, in addition to other allied activities. He testified that he personally handled the sale of a 1978 International Truck to Gee on July 7, 1978. After the balance on the truck was ascertained, the installment sales contract was transferred to International Credit Corporation by Hawkins. Under the agreement between the parties Gee traded in another truck and according to the first testimony of Hawkins, a balance on that truck was owed a local bank in the sum of $16,164. The truck was in the shop at that time undergoing certain repairs sustained as a result of some type of collision. Hawkins testified that he paid the bank the sum of $16,164, although the truck was worth only $12,000. On cross examination Hawkins testified at least two times that he paid the above stated amount to the bank to clear title to the truck. Upon being pressed on cross examination, he admitted that he only paid $15,689, but did not have a cancelled check to show the payment. We digress here to point out that the sales agreement hereinafter discussed and completed on July 7, 1978, shows the amount owing as $15,689.
The reason given by plaintiff Hawkins as to why he required the post-dated check involved in this case was that he required that 20% to 30% of the price of the vehicle be paid as a down payment by the purchaser and that this check was necessary to make the down payment reach that requirement.
Defendant Gee [appellant here] testified that while his truck was in the shop, he went to Mid-State and first talked with a salesman named Don, and later to Mr. Hawkins' son, Charles, Jr. At that time he had only $5,500 to pay down on a new truck.
Gee then testified that Mr. Hawkins, Sr. called him the next morning, July 7, and asked if he were still interested in purchasing the truck. According to Gee, Hawkins told him that he would have to come up with another $3,000 in addition to the $5,500 and if he could do so, Hawkins would "put me to riding." Gee called his mother, a beauty shop operator, and secured the additional $3,000. After Hawkins and Gee got together personally at Mid-State that afternoon, according to Gee's testimony, Hawkins told him he would have to have an additional $4,439 as a down payment, but he would take Gee's check given that date, July 7, but post-dated August 22, 1978. According to Gee this requirement was to bring the down payment up to 25% of the value of the vehicle and would be considered as a down payment in completing the financing instruments. Gee further testified that sometime after the entire transaction was consummated, the local bank that financed the first truck drew a draft on him for a monthly payment of over $600. He had to borrow money to pay this draft.
Gee testified that the transaction was agreed upon late in the afternoon. He was told by Hawkins to sign the instrument in blank so that the secretary could fill it out before leaving work. In the meantime Gee could drive the truck around and put gasoline in it. Gee further testified that after this Hawkins came from the place of business, gave him a sealed envelope and told him it was his copy of the papers. Gee *827 further testified that on Monday morning he was going to Alabama, where the truck would be used, and that when he stopped to purchase an Alabama tag, he opened the envelope for the first time and discovered that the post-dated check in the amount of $4,439 was not included in the financing papers. He then stopped payment on the check.
When pressed on cross examination as to why he agreed to add the post-dated check to the financing of the truck, Gee stated that his definite instructions were that 25% of the value of the truck would have to be paid as a down payment. In looking at the retail installment contract, a copy of which is attached hereto as Appendix A, we note the price of the truck to be $54,700, twenty-five percent of this retail price is $13,675. Now adding the cash down payment of $8,500, and the "net" trade-in allowance, after payment to the bank for the other truck as testified by Hawkins, there is left and is shown on the contract the sum of $475. Adding these two figures to the amount of the post-dated check of $4,439, we arrive at an amount of $13,444, which is approximately the amount of twenty-five percent of the value of the retail price of the new truck.
The jury agreed with defendant Gee that the amount of the post-dated check should have been included as a down payment in the installment contract, which of course, would have reduced the amount of the monthly payments. A unanimous verdict was returned for Gee, but on motion of defendant Hawkins, the lower court granted Hawkins a judgment notwithstanding the verdict in the sum of the post-dated check with interest, or a total judgment of $5,141.95.
The reasons given for granting the judgment notwithstanding the verdict were that (1) the plaintiff was entitled to a directed verdict or a peremptory instruction, (2) the jury's verdict was against the overwhelming weight of the evidence, and (3) the jury was not responsive to the instructions.
We readily see that the primary question to be decided by this Court on appeal is whether or not the evidence was sufficient to require that the cause be submitted to the jury for its decision. In analyzing the evidence, we are mandated to follow what the Court previously has stated is necessary to consider when determining whether or not a lower court was correct in granting a judgment notwithstanding the verdict of the jury. This Court has considered this question a number of times and an analysis of our requirements is set out in the case of Paymaster Oil Mill Company v. Mitchell, 319 So.2d 652 (Miss. 1975). In Paymaster, we quoted the rule as set out in the prior case of General Tire & Rubber Co. v. Darnell, 221 So.2d 104 at 105 (Miss. 1969), where we stated:
The established rule is that when the court considers whether the defendant is entitled to a judgment as a matter of law, the court should consider the evidence in the light most favorable to plaintiff, disregard any evidence on the part of defendant in conflict with that favorable to plaintiff, and if the evidence and reasonable inferences to be drawn therefrom would support a verdict for plaintiff the jury should not be disturbed.
Of course, the same principles stated above apply where the plaintiff is seeking a peremptory instruction or a judgment notwithstanding the verdict, as well as where the defendant is so doing.
As stated in Paymaster, the same principle applies whether the lower court is passing on a motion for directed verdict or a judgment notwithstanding the verdict of the jury. In Paymaster, we further stated:
We have held many times that in passing on a motion for a directed verdict the court must look only to the testimony adduced for the plaintiff and accord truthfulness to it and indulge all favorable inferences that could be drawn therefrom, and if either is sufficient to support a verdict, then the motion for a directed verdict should be overruled. We *828 have also stated in considering a motion for a directed verdict that it should be overruled even though a verdict in favor of the plaintiff would be contrary to the overwhelming weight of the evidence. King v. Dudley, 286 So.2d 814 (Miss. 1973).
In announcing this rule we have often used the term "solely" or "only", or their equivalent, thereby restricting the evidence considered for the purposes of the motion to that of the plaintiff. Ezell v. Metropolitan Ins. Co., 228 So.2d 890 (Miss. 1969); Meaut v. Langlinais, 240 Miss. 242, 126 So.2d 866 (1961); Buntyn v. Robinson, 233 Miss. 360, 102 So.2d 126 (1958), and other cases not necessary to cite. We have also stated the test for determining whether or not a motion for a judgment notwithstanding the verdict should be sustained is the same. Carlize v. Richards, 216 So.2d 422 (Miss. 1968); Hawkins v. Hillman, 245 Miss. 385, 149 So.2d 17 (1963), and the cases cited therein.
These rules probably emanate from a common law "demurrer to the evidence," but whatever their source, they have been implemented by this Court doubtless to preserve the plaintiff's statutory right to two new jury trials if there be a conflict of fact for resolution. [Miss. Code Ann. § 11-7-213 (1972)]. This necessitates a different result when a motion for a directed verdict, a peremptory instruction or a motion for a judgment n.o.v. is sustained from that of a motion for a new trial because the verdict is against the preponderance of the evidence. The former denies a new trial. The latter permits it.
In analyzing the rather brief testimony of the only two witnesses in this case, and the retail contract instrument itself, we, in applying the above set out rules are forced to hold that defendant Gee presented evidence sufficient to withstand both a motion for directed verdict and a motion for judgment notwithstanding the verdict. The evidence to a certain extent was conflicting. Considering, however, the evidence of Gee, it was positive that the post-dated check was given to be included in the cash down payment for the truck. An examination of the instrument itself clearly shows that it was not so included. Furthermore, if it had been included as testified by Gee, his monthly payments would have been less. The jury therefore under the instructions of the court was justified in finding that there was no consideration for the post-dated check and Gee received nothing for its issuance. The instructions given to the plaintiff and the defendant by the court were directed toward the issue of consideration or lack of consideration.
It follows therefore, that the lower court did not apply the proper principles set out above to the evidence shown in the appeal record and was in error in sustaining appellee's motion for a judgment notwithstanding the verdict. To us, this was a clear question for the jury. It is necessary for us to reverse the cause and reinstate the verdict of the jury for appellant Gee and enter judgment thereon.
The counter claim filed by appellant Gee in the court below which was dismissed by the court shows almost negligible content and proof under this counter claim and does not merit discussion here. The court's action in this regard is affirmed. In addition, there was no cross assignment of errors filed by appellant.
REVERSED AND JUDGMENT RENDERED HERE FOR APPELLANT CHARLES W. GEE.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM and LEE, JJ., concur.
HAWKINS, J., took no part.
*829