# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2014-CA-00505-SCT

*MARCIA MARIE AND DONALD MARIE, JR.*

*v.*

*HEATHER NORTH, M.D., AND GULFSHORE
MEDICAL CONSULTANTS, P.A.*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/31/2013 |
| TRIAL JUDGE: | HON. LAWRENCE PAUL BOURGEOIS, JR. |
| TRIAL COURT ATTORNEYS: | L. CHRISTOPHER BREARD |
| | DAVID A. WHEELER |
| | JAMES H. HEIDELBERG |
| | STEPHEN WALKER BURROW |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | L. CHRISTOPHER BREARD |
| | DAVID A. WHEELER |
| ATTORNEYS FOR APPELLEES: | STEPHEN WALKER BURROW |
| | JAMES H. HEIDELBERG |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | AFFIRMED - 10/15/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     In this "battle of the experts" case, the trial court first denied a motion *in limine* by

Marcia and Donald Marie to exclude entries made by Dr. Dennis Boulware, a consulting

physician, in his medical records and then denied the Maries' Motion for Judgment

Notwithstanding the Verdict (JNOV) after a judgment was entered in favor of Dr. Heather

North and Gulfshore Medical Consultants. Finding that the trial court did not err, we affirm its judgment.

## STATEMENT OF FACTS AND PROCEEDINGS BELOW

¶2.     Beginning in November 2001, Marcia Marie began experiencing lower extremity pain. She first sought treatment from her family physician, who referred her to an orthopedist, who then referred her to Dr. Heather North, an internist and rheumatologist. Dr. North treated Marie beginning from the spring of 2002 until January 2004, for inflammatory arthritis associated with inflammatory chronic immune demyelinating polyneuropathy[1] and monoclonal gammopathy of unknown significance.[2] In December 2003, Marie was hospitalized for increasing complaints of excruciating pain and sleeplessness. During her hospitalization, Dr. North determined that Marie's right leg had no circulation from the knee down. Marie was diagnosed with distal lower extremity vasculitis and ischemic right foot,

---

[1] "Chronic inflammatory demyelinating polyneuropathy (CIDP) is a rare neurological disorder in which there is inflammation of nerve roots and peripheral nerves and destruction of the fatty protective covering (myelin sheath) over the nerves. This affects how fast the nerve signals are transmitted and leads to loss of nerve fibers. This causes weakness, paralysis and/or impairment in motor function, especially of the arms and legs (limbs)." http://www.webmd.com/brain/chronic-inflammatory-demyelinating-polyneuropathy (last visited October 13, 2015).

[2] "Monoclonal gammopathy of undetermined significance (MGUS) is a condition in which an abnormal protein (monoclonal protein, or M protein) is in the blood. M protein is produced by plasma cells, a type of white blood cell. Monoclonal gammopathy of undetermined significance usually causes no problems. Sometimes, monoclonal gammopathy of undetermined significance is either associated with another disease or can progress over years to other disorders, including some forms of blood cancer." http://www.mayoclinic.org/diseases-conditions/mgus/basics/definition/con-20026422 (last visited October 13, 2015).

steroid induced diabetes, chronic immune demyelinating polyneuropathy, and monoclonal gammopathy of unknown significance.

¶3.     Dr. North then referred Marcia to Dr. Boulware, a rheumatologist at the University of Alabama at Birmingham, for a second opinion. On December 19, 2003, Dr. Boulware agreed with Dr. North's assessment and treatment,[3] noting in the same paragraph of his clinic note that Marcia would most likely "lose some of her toes and possibly part of her foot, if not up to the level of her knee." On December 22, 2003, Marcia's right leg was amputated below her right knee. In June 2004, half of Marcia's big toe on her left foot was amputated.

¶4.     Marcia and Donald Marie filed suit in Harrison County Circuit Court against Heather North, M.D., and Gulfshore Medical Consultants, P.A., (collectively referred to as "Dr. North"), alleging the defendants were negligent in their medical care and treatment of Marcia Marie, which resulted in the amputations.

¶5.     Prior to trial, the Maries filed three motions *in limine*. The Maries requested that the court redact a portion of Dr. Boulware's medical records, a clinic note, which read, "[s]he has been treated and evaluated extremely well by Dr. North and at this time was strongly encouraged to maintain follow-up with her." The Maries argued this entry was "an unsubstantiated opinion based on speculation and not the full medical records." The Maries also argued that Dr. Boulware had not been designated as an expert witness and was not subject to cross-examination.

---

[3] ". . . [S]he is certainly under adequate treatment at this time. . . ."

¶6.     The Maries also requested that the court exclude any testimony regarding a conversation Dr. North had with Dr. Leonard Serebro. Dr. North testified that Dr. Serebro told her "you're doing the best that can be done." Based on Dr. North's deposition testimony, neither the conversation nor the content of the conversation was ever recorded in Marcia's medical records. The Maries made the same legal argument as they made in the motion regarding Dr. Boulware.

¶7.     Finally, the Maries asked the court to redact portions of Dr. Henry Stonnington's medical records, a consultation note which read: "I really do think that Dr. North is on the right track." The Maries' legal argument was verbatim of the arguments in the other two motions.[4]

¶8.     In response to all three motions *in limine*, Dr. North argued that all were admissible under Rules 803(4) and 803(6) of the Mississippi Rules of Evidence. The trial court denied the motions *in limine* as to Drs. Boulware and Stonnington because the consultation notes were found in the medical records. As to Dr. Serebro, the trial court granted the motion because nothing was memorialized in the medical records about the conversation between Dr. North and Dr. Serebro. The Maries offered Marcia's complete medical records, which included the entries of both Drs. Boulware and Stonnington as trial exhibits with the same objections as stated in their motions *in limine*.

¶9.     During the four-day trial, the jury heard testimony from the Maries, Dr. North, and experts for both sides. All parties argued in their briefs that this case was a "classic battle of

---

[4] The Maries did not appeal the trial court's denial of their motion *in limine* as to Dr. Stonnington.

the experts." Ultimately, the jury determined that Dr. North was not negligent in her medical care and treatment of Marcia. The trial court entered a final judgment in favor of Dr. North and Gulfshore Medical Consultants, P.A.

¶10.    The Maries filed a motion for JNOV or, in the alternative, for a new trial. The Maries argued that the trial court had abused its discretion in denying the motion *in limine* to redact Dr. Boulware's consultation note. After the trial court denied the Maries' motion for JNOV, the Maries requested that the trial court enter findings of fact and conclusions of law. The trial court denied the *ore tenus* motion. The Maries timely filed notice of this appeal, arguing that Dr. Boulware's medical records were inadmissible under Mississippi Rules of Evidence 803(4), 803(6), and 403, and that Dr. Boulware's statements were improper expert testimony, *inter alia*. Finding the trial court did not err in admitting the medical records, we affirm the trial court's judgment.

## ANALYSIS

¶11.    The standard of review for admissibility of evidence is abuse of discretion, ***Bullock v. Lott***, 964 So. 2d 1119, 1132 (Miss. 2007), and the standard of review for a JNOV is *de novo*. ***Bus. Commc'ns, Inc. v. Banks***, 90 So. 3d 1221, 1224 (Miss. 2012) (citing ***Watts v. Radiator Specialty Co.***, 990 So. 2d 143, 150 (Miss. 2008)). "A motion for JNOV is a challenge to the legal sufficiency of the evidence, and this Court will affirm the denial of a JNOV if there is substantial evidence to support the verdict." ***United Servs. Auto. Ass'n (USSA) v. Lisanby***, 47 So. 3d 1172, 1176 (Miss. 2010) (citing ***Adcock v. Miss. Transp. Comm'n***, 981 So. 2d 942, 948 (Miss. 2008)). This Court is required to "view the evidence

5

in the light most favorable to the nonmoving party." ***Mollaghan v. Varnell***, 105 So. 3d 291, 300 (Miss. 2012). "[I]f there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair minded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance is required." ***Corley v. Evans***, 835 So. 2d 30, 37 (Miss. 2003) (quoting ***Fitzner Pontiac-Buick-Cadillac, Inc. v. Smith***, 523 So. 2d 324, 326 (Miss. 1988)).

¶12.   The evidentiary issues the Maries raised relate to Dr. Boulware's medical records. In their motion *in limine*, the Maries sought to exclude entries Dr. Boulware had made in his consultation notes. The Maries argue that the trial court should have granted the motion and such denial was an abuse of discretion.

¶13.   Dr. Boulware saw Marcia after Marcia was told she most likely would lose her foot due to vasculitis. The Maries hoped a second opinion by Dr. Boulware would provide them with other options aside from amputation. According to Dr. Boulware's clinic note, he took an extensive history, which included Marcia's history of smoking a pack of cigarettes per day for forty years, ceasing only two weeks prior to seeing Dr. Boulware, and her family history of vasculitis, with her mother having recently lost a foot. Dr. Boulware conducted a physical exam, noting Marcia's extremities were swollen and bluish in color, and that he could not feel a pulse in her right foot. He reviewed laboratory results and extensive medical records. We quote Dr. Boulware's impression verbatim from the medical record:

> At this time, it is difficult to tell what type of vasculitis she has but more than likely this will be a medium sized vessel disease, such as polyarteritis nodosa. It appears odd that it would affect only her distal legs and not other areas. Burger's disease is also a possibility for her in light of her long smoking

history. I am not very confident about the ability of a radiologist to detect a necrotizing vasculitis by angiography, as opposed to Burger's disease and other atherosclerotic processes. Only a biopsy will truly give us a clear answer and at this point in time would not be worth it. She has been treated and evaluated extremely well by Dr. North and at this time was strongly encouraged to maintain follow-up with her. The only other consideration I would have would be to assess her heart with an echocardiogram for possibility of a mural thrombus and embolic disease that could be complicating some of this. This is very unlikely but is the final element to be assessed.

Dr. Boulware discussed Marcia's condition "at length with [her]" and provided a copy of the report to Dr. North.

¶14. The Maries argue that the text from Dr. Boulware's report stating Marcia had been treated and evaluated extremely well by Dr. North should have been redacted and should not have been disclosed at trial. The trial court ruled that Dr. Boulware's clinic notes were part of her medical records and that Dr. North had consulted with Dr. Boulware regarding Marcia's diagnosis and treatment. The trial court denied the Maries' motion to exclude Dr. Boulware's consultation note.

¶15. Rule 803 of the Mississippi Rules of Evidence provides exceptions to the hearsay rule. Two exceptions allow for statements in medical records to be admissible into evidence at trial. Specifically, Rule 803(4) reads:

> Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment, regardless of to whom the statements are made, or when the statements are made, if the court, in its discretion, affirmatively finds that the proffered statements were made under circumstances substantially indicating their trustworthiness. For purposes of this rule, the term "medical" refers to emotional and mental health as well as physical health.

7

M.R.E. 803(4). We have provided that:

> [t]here is a two-part test for admitting hearsay statements under 803(4). . . . First, the declarant's motive in making the statement must be consistent with the purposes of promoting treatment; and second, the content of the statement must be such as is reasonably relied on . . . in treatment.

*Wilson v. State*, 96 So. 3d 721, 727 (Miss. 2012) (quoting *Branch v. State*, 998 So. 2d 411, 414 (Miss. 2008) (citations omitted)).

¶16.    Dr. Boulware performed Marcia's evaluation for the purpose of evaluation, treatment, and a second opinion. Dr. Boulware prepared his clinic notes in the context of offering advice and opinions for Marcia's ongoing medical problems. Dr. Boulware's notes reflect that he considered and discounted various alternatives to diagnosing and treating Marcia's medical problems. Therefore, he made the statement with the purpose of promoting treatment, and Dr. North and any other medical provider who would provide treatment for Marcia in the future reasonably can rely upon it. *Id.*

¶17.    For the evidence to be admissible under Rule 803(4), the trial court must find the proffered entries were made under circumstances indicating their trustworthiness. *See* M.R.E. 803(4). The trial court noted that Dr. Boulware was called in to consult and provide a second opinion as to Dr. North's diagnosis and treatment.

¶18.    Alternatively, Rule 803(6) reads:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions or diagnosis, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or self-authenticated pursuant to Rule 902(11), unless the source of

8

information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

M.R.E. 803(6). "Rule 803(6) specifically includes diagnoses and opinions as proper subjects of admissible entries, as well as the traditionally admissible entries pertaining to acts, events and conditions." M.R.E. 803(6), cmt. The consultative note and statement regarding Dr. North's prior treatment and evaluation all were generated during the course of Dr. Boulware's examination of Marcia.

¶19. The trial court found that Dr. Boulware's clinic notes were medical records and that physicians routinely consult one another. We find that the trial court did not abuse its discretion in denying the Maries' motion *in limine* to exclude entries found in Dr. Boulware's clinic notes.

¶20. Although the Maries did not ask that the trial court conduct a Rule 403 balancing test, the Maries now allege trial-court error in admitting Dr. Boulware's statement because of its prejudicial nature.

> When reviewing evidentiary determinations, this Court necessarily accords broad discretion to our trial courts. In ***Jenkins v. State***, 507 So. 2d 89 (Miss. 1987), we explored the reasoning behind our deference and stated that, as a matter of institutional necessity, we must accord certain leeway to the circuit court. ***Id.*** at 93. Moreover, the weighing and balancing task required by Rule 403 is not one susceptible of mechanical performance as it asks only that a judge rely on his/her own sound judgment. ***Id.*** As such, the law gives the trial court discretion. ***Id.***
>
> . . . Accordingly, while we clearly interpret the rules of evidence as requiring that all otherwise admissible evidence be "filtered" through the balancing test set forth in Rule 403, we do not interpret this requirement to be a regimented procedure that must be explicitly performed on pain of reversal. Though this

9

Court certainly expects trial judges to have considered Rule 403 in making their evidentiary rulings, we certainly do not predicate the soundness of these determinations on the express use of magic words. . . . It follows that our review depends on the evidence and not the judge, and while a judge's on-the-record analysis is recommended as it serves to fortify the judge's position for purposes of review, the lack of such analysis is harmless unless we deem the evidence to be patently prejudicial.

*Jones v. State*, 920 So. 2d 465, 475-76 (Miss. 2006). The trial court properly admitted Dr. Boulware's consultation notes as the probative value was not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. M.R.E. 403.

¶21. Finally, the Maries argue that the trial court erred in denying their motion for JNOV. In considering the Maries' motion for JNOV, the court was bound to consider as true all testimony favorable to the party against whom the request was made. Both parties presented expert witnesses who came to opposite conclusions on the question of whether Dr. North and Gulfshore Medical Consultants, P.A., were negligent in their medical care and treatment of Marcia Marie. The record reveals ample evidence to support the verdict; therefore, the trial court properly submitted this question of fact to the jury for its determination. *See Scafidel v. Crawford*, 486 So. 2d 370, 374 (Miss. 1986); *Gee v. Hawkins*, 402 So. 2d 825 (Miss. 1981); *Blackwell v. Dairymen, Inc.*, 369 So. 2d 511 (Miss. 1979).

¶22. We find that the remaining issues raised by the Maries lack merit.

**CONCLUSION**

¶23. We find that the trial court did not err in denying the Maries' motion *in limine* to exclude entries from Dr. Boulware's clinic notes. The notes were medical records and were properly admitted under either Rule 803(4) or (6) of the Mississippi Rules of Evidence.

Furthermore, we find that the trial court properly denied the Maries' motion for JNOV, for sufficient evidence supported the jury's verdict in favor of Dr. North and Gulfshore Medical Consultants, P.A. Therefore, we affirm the judgment of the trial court.

¶24. **AFFIRMED.**

**WALLER, C.J., CHANDLER, PIERCE, AND COLEMAN, JJ., CONCUR. KITCHENS, J., DISSENTS, WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J., LAMAR AND KING, JJ.**

**KITCHENS, JUSTICE, DISSENTING:**

¶25. Because the trial court committed reversible error by admitting, over the Maries' objections, prejudicial portions of a statement made by Dr. Boulware, I respectfully dissent.

¶26. On December 19, 2003, Marcia Marie went to Dr. Boulware, a rheumatologist at the University of Alabama at Birmingham, for an opinion regarding her vasculitis and her prognosis. In his New Patient Clinic Note, which is part of Marcia Marie's medical records, Dr. Boulware recorded Marcia Marie's medical history and observations related to her vasculitis. Dr. Boulware's impression of Marcia Marie's illness was: "it is difficult to tell what type of vasculitis she has but more than likely this will be a medium sized vessel disease . . . . She has been treated and evaluated extremely well by Dr. North and at this time was strongly encouraged to maintain follow-up with her."

¶27. Prior to trial, the Maries filed a motion *in limine* to redact Marcia Marie's medical records, particularly the portion of Dr. Boulware's Rheumatology New Patient Clinic Note in which Dr. Boulware had written that Marcia Marie "has been treated and evaluated extremely well by Dr. North and at this time was strongly encouraged to maintain follow-up

11

with her." The Maries argued that this statement was based upon speculation instead of Marcia Marie's medical records. Specifically, in their motion *in limine*, the Maries asserted that "[t]o allow this portion of Mrs. Marie's medical records to be presented into evidence would highly prejudice the Plaintiff. It[s] . . . probative value, if any[,] is far outweighed by its prejudicial effect." In response, Dr. North argued that Dr. Boulware's statement was admissible under Mississippi Rule of Evidence 803(4), allowing for the admission of hearsay statements made for the purposes of medical diagnosis and treatment, and under Mississippi Rule of Evidence 803(6), allowing for the admission of hearsay statements if they are records of regularly conducted business activity. The trial court denied the Maries' motion *in limine*, holding that Dr. Boulware's statement was admissible because it was a "medical record."

¶28.    After the trial court had held that Dr. Boulware's statement was admissible, the Maries offered Marcia Marie's medical records into evidence as Exhibit 1, with Dr. Boulware's statement unredacted.    The plaintiffs then objected to that evidence, arguing that Dr. Boulware's statement was inadmissible for the same reasons that they had previously argued in their motion *in limine*. The trial court responded: "You've got your objection."

¶29.    Although awkwardly presented, the Maries did make and preserve their objection to the receipt of Dr. Boulware's statement into evidence.   In the circumstances, the better practice would have been for the Maries to have premarked the medical-records exhibit that included Dr. Boulware's complimentary statement about Dr. North with that statement redacted.  This exhibit could have been tendered into evidence by the Maries during their case-in-chief. Clearly, they were entitled to have such an exhibit received into evidence.  Dr.

12

North, of course, was at liberty to object to the redaction pretrial and also to make a contemporaneous objection to its receipt into evidence. In anticipation that the defendants would tender the same exhibit without the redaction–and the defendants likely would have premarked such an exhibit–a motion *in limine* by the Maries could have urged the trial court not to receive such a defense exhibit into evidence.

¶30.     "The admissibility of evidence rests within the discretion of the trial court, and reversal is appropriate only when a trial court commits an abuse of discretion resulting in prejudice . . . ." ***Ross v. State***, 954 So. 2d 968, 992 (Miss. 2007) (citing ***Irby v. State***, 893 So.2d 1042, 1047 (Miss. 2004)).

¶31.     The Mississippi Rules of Evidence provide that "[h]earsay is not admissible except as provided by law." M.R.E. 802. Further, *hearsay* is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." M.R.E. 801(c). Because Dr. Boulware's Rheumatology New Patient Clinic Note was hearsay, we must examine whether that statement is covered by one or more of the hearsay exceptions found in the Mississippi Rules of Evidence. *See* M.R.E. 802. Rule 803(4) provides:

> Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment, regardless of to whom the statements are made, or when the statements are made, if the court, in its discretion, affirmatively finds that the proffered statements were made under circumstances substantially indicating their trustworthiness. For purposes of this rule, the term "medical" refers to emotional and mental health as well as physical health.

13

It is clear, however, that this rule applies only to statements made by the person *seeking* medical diagnosis or care or on behalf of the person seeking medical diagnosis or care, not to the observations of the patient's doctor. *See Valmain v. State*, 5 So. 3d 1079, 1083-84 (Miss. 2009). Indeed, we have held that "[t]he underlying principle of the Rule 803(4) hearsay exception is that statements *made to physicians* are highly likely to be truthful." *Id.* at 1084 (emphasis added). We have found that these hearsay statements are sufficiently reliable because they are "assured by the likelihood that the patient believes that the effectiveness of the treatment depends on the accuracy of the information provided to the doctor, which may be termed a 'selfish treatment motivation.'" *Id.* (quoting Broun, et al., *McCormick on Evidence* 2 § 277, 284 (6th ed. 2006)). Dr. Boulware's statement was not one made by a patient to a physician and therefore it does not carry the indicia of reliability that justify this hearsay exception. Moreover, the trial court did not admit Dr. Boulware's statement under Rule 803(4). The trial court admitted Dr. Boulware's statement as a "medical record." Ultimately, the majority's application of Rule 803(4) to Dr. Boulware's statement is unprecedented and it is unsupported by the policy underlying the rule. Because Dr. Boulware was not seeking treatment when writing his clinic note, Rule 803(4) does not apply.

¶32. Instead, Dr. Boulware's statement meets the exception to the hearsay prohibition outlined in Rule 803(6) of the Mississippi Rules of Evidence. Rule 803(6), which articulates an exception to the hearsay rule for records of regularly conducted business activity, provides:

14

A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions or diagnosis, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or self-authenticated pursuant to Rule 902(11), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

The comments to this rule say, in pertinent part: "Rule 803(6) specifically includes diagnoses and opinions as proper subjects of admissible entries, as well as the traditionally admissible entries pertaining to acts, events and conditions."

¶33.   The Maries argue that, even if Dr. Boulware's statement meets the Rule 803(6) hearsay exception, it is inadmissible because it is unreliable. The Maries opine that Dr. Boulware's statement was not based on credible evidence. Dr. Boulware's statement was based upon his independent evaluation of Marcia Marie. Thus, it is clear that Dr. Boulware's written notes, made for the purpose of communicating his opinion regarding Marcia Marie's diagnosis and prognosis, meet the exception to the hearsay proscription outlined in Rule 803(6).

¶34.   However, even if Dr. Boulware's statement qualifies as an exception to the hearsay rule, it still may be inadmissible if its probative value is substantially outweighed by the unfair prejudice it creates. Rule 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion

15

of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." M.R.E. 403.

¶35. It is common for medical records to include statements and opinions from healthcare professionals who will not be offered as witnesses and whose expert qualifications are not established in the case. To avoid hearsay exclusion, an expert who has been qualified to offer an opinion in the case  must testify that statements and opinions such as those included in the medical records are the kinds of statements and opinions ordinarily relied upon by experts in the field.

¶36. Dr. Boulware was not offered as an expert in this case, his statement was not offered as part of an expert  report, and his testimony was not admitted into evidence as that of an expert witness.  However, the statement itself spoke to the standard of care applicable to Dr. North.  Thus, although this statement was admitted merely as a "medical record," because Dr. Boulware's statement addressed the issue of Dr. North's standard of care, we cannot ignore that it is the type of testimonial statement that this Court has mandated is appropriate only if given by experts or customarily relied upon by experts in the field. *See Foster v. Noel*, 715 So. 2d 174, 183 (Miss. 1998).  Indeed, this is the very reason that we have an exacting Rule 702.  *See Bailey Lumber & Supply Co. v. Robinson*, 98 So. 3d 986, 992 (Miss. 2012). We have held that, in order to for an expert opinion to be reliable, a witness must demonstrate that he has the "knowledge, skill, experience, training, or education" to satisfy Rule 702. *Troupe v. McAuley*, 955 So. 2d 848, 856 (Miss. 2007); *accord Bailey Lumber & Supply Co.*, 98 So. 3d at 996 (holding that the opinion of a doctor who specialized in internal

16

medicine regarding the cause of a patient's hip injury was unreliable because he lacked sufficient expertise in the relevant medical field); ***Worthy v. McNair***, 37 So. 3d 609, 616-17 (Miss. 2012) (holding that an obstetrician-gynecologist's testimony about unborn baby's cause of death was unreliable because he lacked the required expertise in the field). In this case, there is no evidence regarding Dr. Boulware's experience, training, education, or expertise in the record and no adjudication that he is, in fact, an expert in rheumatology. Furthermore, the Maries have had no opportunity to cross-examine him regarding the basis for his opinion. Thus, his opinion regarding the relevant standard of care has minimal, if any, probative value under our rules, because the standard of care is a topic about which only qualified experts may testify and because Dr. Boulware's statement lacks the indicia of reliability to be admitted as expert testimony.

¶37. Furthermore, this statement was highly prejudicial to the Maries. It speaks directly to the very claims the Maries sought to prove at trial. Moreover, because it was a statement made by a physician, the jury easily could have found it persuasive and would not have known that it was not to assign to this statement the same weight it would give that of a medical expert who had undergone Rule 702 vetting at trial. Because its prejudicial effect substantially outweighed its probative value, the trial court abused its discretion in admitting Dr. Boulware's statement into evidence. M.R.E. 403. And because admission of the statement affected a "substantial right" of a party, its admission constituted reversible error. M.R.E. 103.

¶38. The majority asserts that the Maries did not request that the trial court perform a Rule 403 balancing test. This is not correct. Specifically, in their motion *in limine*, the Maries asserted that "[t]o allow this portion of Mrs. Marie's medical records to be presented into evidence would highly prejudice the Plaintiff. It[s] . . . probative value, if any is far outweighed by its prejudicial effect." Further, in their rebuttal brief, the Maries argued:

> Rule 403 of the Mississippi Rules of Evidence states, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

> Plaintiffs have the burden of proving the standard of care and breach thereof by competent medical testimony. It is through admissible, competent medical testimony that the jury should weigh the evidence and determine whether the standard of care was breached. If the jury sees untrustworthy, hearsay notes that Mrs. Marie "has been treated and evaluated extremely well" and "I really do think that Dr. North is on the right track," and hears of a conversation wherein another doctor states, "You're doing the best that can be done," Plaintiffs will be highly prejudiced in this case. Such prejudice highly outweighs any probative value.

The majority suggests that it is not enough to invoke Rule 403; a party also must explicitly request that the trial court perform a balancing test to assert a proper objection. The majority's holding is inconsistent with our case law and the Mississippi Rules of Evidence. We have held that, once an objection to the admission of evidence is made on the basis of Rule 403, the trial court should perform an on-the-record balancing test. *Smith v. State*, 656 So. 2d 95 (Miss. 1995), *overruled in part by Brown v. State*, 890 So. 2d 901 (Miss. 2004) (abandoning *Smith*'s requirement that a trial judge *sua sponte* give a limiting instruction). Because Rule 403 describes a balancing test, there is no way for a court to evaluate the

18

admissibility of evidence under Rule 403 without performing a balancing test. *See* M.R.E. 403. Thus, the invocation of Rule 403, which requires the trial court to determine whether evidence is substantially more prejudicial than it is probative, is *ipso facto* a request for the trial court to perform a Rule 403 balancing test. *See id.*

¶39.    Ultimately, the majority errs in finding that Dr. Boulware's statement was admissible because it meets the test of Rule 803(4).    Moreover, Dr. Boulware's statement was inadmissible evidence because its prejudicial effect was substantially outweighed by its probative value.  Therefore, I respectfully dissent.

**DICKINSON, P.J., LAMAR AND KING, JJ., JOIN THIS OPINION.**