RANDOLPH, Presiding Justice,
for the Court:
¶ 1. In this “battle of the experts” case, the trial court first denied a motion in limine by Marcia and Donald Marie to exclude entries made by Dr. Dennis Boul-ware, a consulting physician, in his medical records and then denied the Maries’ Motion for Judgment Notwithstanding the Verdict (JNOV) after a judgment was entered in favor of Dr. Heather North and Gulfshore Medical Consultants. Finding that the trial court did not err, we affirm its judgment.
STATEMENT OF FACTS AND PROCEEDINGS BELOW
¶ 2. Beginning in November 2001, Marcia Marie began experiencing lower extremity pain. She first sought treatment from her family physician, who referred her to an orthopedist, who then referred her to Dr. Heather North, an internist and rheumatologist. Dr. North treated Marie beginning from the spring of 2002 until January 2004, for inflammatory arthritis associated with inflammatory chronic immune demyelinating polyneuropathy[1] and monoclonal gammopathy of unknown sig *626 nificance.[2] In , December 2003, Marie was hospitalized for increasing complaints of excruciating pain and sleeplessness. During her hospitalization, Dr. North determined that Marie’s right leg had no circulation from the knee down. Marie was diagnosed with distal lower extremity vas-culitis and ischemic 'right foot, steroid induced diabetes, chronic immune demyeli-nating- polyneuropathy, and monoclonal gammopathy of unknown significance.
¶ 3. Dr. North then referred Marcia to Dr. Boulware, a rheumatologist at the University of Alabama at Birmingham, for a second opinion. On December 19, 2003, Dr; Boulware agreed with Dr. North’s assessment and treatment,[3] noting in the same paragraph of his clinic note that Marcia would most likely “lose some of her toes and possibly part of her foot, if not up to the level of her knee.” On December 22, 2003, Marcia’s right leg was amputated below her right knee. In June 2004, half of Marcia’s big toe on her left foot was amputated.
¶ 4. Marcia and Donald Marie filed suit in Harrison County Circuit Court against Heather North, M.D., and Gulfshore Medical Consultants, P.A., (collectively referred' to as “Dr. North”), alleging the defendants were negligent in their medical care- and treatment of Marcia Marie, which resulted in the amputations.
¶ 5. Prior to trial, the Maries filed three motions in limine. The Maries requested that the court redact a portion of Dr. Boulware’s .medical records, a clinic note, which read, “[s]he has been treated - and evaluated extremely well by Dr. North and at this time was strongly encouraged to maintain follow-up with her.” , The Maries argued this entry was “an unsubstantiated opinion based on speculation and not the full medical records.” The Maries also argued that Dr. Boulware had not been designated as an expert witness and was not subject to cross-examination.
¶ 6. The Maries also requested that the court exclude any testimony regarding a conversation Dr. North had with Dr. Leonard Serebro. Dr. North testified that Dr. Serebro told her “you’re doing the best that can be done.” Based on Dr. North’s deposition testimony, neither the conversation nor the content of the conversation was ever recorded in Marcia’s medical records. The Maries made the same legal argument as they made in the motion regarding Dr. Boulware.
¶ 7. Finally, the Maries asked the court to redact portions of Dr. Henry Stonning-ton’s medical records, a consultation note which read: “I really do think that Dr. North is on the right track.” The Maries’ legal argument was verbatim of the arguments in the other two motions.[4]
¶ 8. In response to all three motions in limine, Dr. North argued that all were admissible under Rules 803(4) and 803(6) of the Mississippi Rules of Evidence. The trial court denied the motions in limine as *627 to Drs. Boulware and Stonnington because the consultation notes were found in the medical records. As to Dr, Serebro, the trial court granted the motion because nothing was memorialized in the, medical records about the conversation between Dr. North and Dr. Serebro. The Maries offered Marcia’s complete medical records, which included the entries of both Drs. Boulware and Stonnington as trial exhibits with the same objections as stated in their motions in limine.
¶ 9. During the four-day trial, the jury heard testimony from the Maries, Dr. North, and experts for both sides. All parties argued in their briefs that this case was a “classic battle of the experts.” Ultimately,, the jury determined that Dr. North was not negligent in her medical care and treatment of Marcia. The trial court entered a final judgment in favor of Dr. North and -Gulfshore Medical Consultants, P.A.
1Í10. The Maries filed a motion for JNOV or, in the alternative, -for a new trial. The Maries argued that the trial court had abused its discretion in denying the motion in limine to redact Dr. Boul-ware’s consultation note. After the trial court denied the Maries’ motion for JNOV, the Maries requested that -the trial court enter findings of fact and conclusions of law. The trial court denied the ore tenus motion. The Maries timely filed notice of this appeal, arguing that Dr. Boulware’s medical records were inadmissible under Mississippi Rules of Evidence 803(4), 803(6), and 403, and that Dr. Boulware’s statements were improper expert testimony, inter alia. Finding the trial court- did not err in admitting the medical records, we affirm the trial court’s judgment.
ANALYSIS
¶ 11. The standard of review for admissibility of evidence is abuse of discretion, Bullock v. Lott, 964 So.2d 1119, 1132 (Miss.2007), and the standard, of review for a JNOV is de novo. Bus. Commc’ns, Inc. v. Banks, 90 So.3d 1221, 1224 (Miss.2012) (citing Watts v. Radiator Specialty Co., 990 So.2d 143, 150. (Miss.2008)). “A motion for JNOV is a challenge to the legal sufficiency of the evidence, and this Court will affirm the denial of a JNOV if there is substantial evidence to support the verdict.” United Servs. Auto. Ass’n (USSA) v. Lisanby, 47 So.3d 1172, 1176 (Miss.2010) (citing. Adcock v. Miss. Transp. Comm’n, 981 So.2d 942, 948 (Miss.2008)). This Court is required to “view the evidence in the light most favorable to the nonmoving party.” Mollaghan v. Varnell, 105 So.3d 291, 300 (Miss.2012). “'[I]f there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair minded jurors in the exercise of impartial judgment might have reached different conclusions, affir-mance is required.” Corley v. Evans, 835 So.2d 30, 37 (Miss.2003). (quoting Fitzner Pontiac-Buick-Cadillac, Inc. v. Smith, 523 So.2d 324, 326 (Miss.1988)).
¶ 12. The evidentiary issues the Maries raised relate to Dr. ■ Boulware’s medical records. In their motion in limine, the Maries sought to exclude entries Dr. Boul-ware had made in his consultation notes. The Maries argue that the trial court should ’have granted the motion and such denial was an abuse of discretion.
¶ 13. Dr. Boulware saw Marcia after Marcia was told she most likély would lose her foot due to vasculitis. The Maries hoped a second opinion by Dr, Boulware would provide them with other options aside from amputation. According to Dr. Boulware’s clinic note, he took an extensive history, which included Marcia’s history of smoking a-pack of cigarettes per day for forty years, ceasing only two weeks prior to seeing Dr. Boulware, and, her fam *628 ily history of vasculitis, with her mother having recently lost a foot. Dr. Boulware conducted a physical exam, noting Marcia’s extremities were swollen and bluish in col- or, and that he could not feel a pulse in her right foot. He reviewed laboratory results and extensive medical records. We quote Dr. Boulware’s impression verbatim from the medical record:
At this time, it is difficult to tell what type of vasculitis she has but more than likely this will be a medium sized vessel disease, such as polyarteritis nodosa. It appears odd that it would affect only her distal legs and not other areas. Burger’s'disease is also a possibility for her in light of her long smoking history.’ I am not very confident about the ability of a radiologist to detect a necrotizing vasculitis by angiography, as opposed to Burger’s disease and other atheroscler-otic processes. Only a biopsy will truly give us a clear answer and at this point in time would not be worth it. She has been treated and evaluated extremely well by Dr. North and at this time was strongly encouraged to maintain followup with her. The only other consideration I would have would be to assess her heart with an echocardiogram for possibility of a mural thrombus and em-bolic disease that could be complicating some of this. This is very unlikely but is the final element to be assessed.
Dr. Boulware discussed Marcia’s condition “at length with [her]” and provided a copy of the report to Dr. North.
¶ 14. The Maries argue that the text from Dr. Boulware’s report stating Marcia had been treated and evaluated extremely well by Dr. North should have been redacted and should not have been disclosed at trial. The trial court ruled that Dr. Boulware’s clinic notes were part of her medical records and that Dr. North had consulted with ■ Dr. Boulware regarding Marcia’s diagnosis and treatment. The trial court denied the Maries’ motion to exclude Dr. Boulware’s consultation note.
¶ 15. Rule 803 of the Mississippi Rules of Evidence provides exceptions to the hearsay rule. Two exceptions allow for statements in medical records to be admissible into evidence at trial. Specifically, Rule 803(4) reads:
Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment, regardless of to whom the statements are made, or when the statements are made, if the court, in its discretion, affirmatively finds that the proffered statements were made under circumstances substantially indicating their trustworthiness. For purposes of this rule, the term “medical” refers to emotional and mental health as well.as physical health.
M.R.E. -803(4). We have provided that:
[t]here is a two-part test for admitting hearsay statements under 803(4).... First; the declarant’s motive in making the statement must be consistent with the purposes of promoting treatment; and second, the content of the statement must be such, as is reasonably relied on ., ..in treatment.
Wilson v. State, 96 So.3d 721, 727 (Miss.2012) (quoting Branch v. State, 998 So.2d 411, 414 (Miss.2008) (citations omitted)).
¶ 16. Dr. Boulware performed Marcia’s evaluation for the purpose of evaluation, treatment, and a second opinion. Dr. Boulware prepared his clinic notes in the context of offering advice and opinions for Marcia’s ongoing medical problems. Dr. Boulware’s notes reflect that he considered and discounted various alternatives to- di *629 agnosing and treating Marcia’s medical problems. Therefore, he made the statement with the purpose of promoting treatment, and Dr. North and any other medical provider who would provide treatment for Marcia in the future reasonably can rely upon it. Id.
¶ 17. For the evidence to be admissible under Rule 803(4), the trial court must find the proffered entries were made under circumstances indicating their trustworthiness. See M.R.E. 803(4). The trial court noted that Dr. Boulware was called in to consult and provide a second opinion as to Dr. North’s diagnosis and treatment.
¶ 18. Alternatively, Rule 803(6) reads:
A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions or diagnosis, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or self-authenticated pursuant to Rule 902(11), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term “business” as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.
M.R.E. 803(6). “Rule 803(6) specifically includes diagnoses and opinions as proper subjects of admissible entries, as well as the traditionally admissible entries pertaining to acts, events and conditions.” M.R.E. 803(6), cmt. The consultative note and statement regarding Dr. North’s prior treatment and evaluation all were generated during the course of Dr. Boulware’s examination of Marcia.
¶ 19. The trial court found that Dr. Boulware’s clinic notes were medical records and that physicians routinely consult one another. We find that the trial court did not abuse its discretion in denying the Maries’ motion in limine to exclude entries found in Dr. Boulware’s-clinic notes.
¶20. Although the Maries did not ask that the trial court conduct a Rule 403 balancing test, the Maries now allege trial-court error in admitting Dr. Boul-ware’s statement because of its prejudicial nature.
When reviewing evidentiary determinations, this Court necessarily accords broad discretion to our trial courts. In Jenkins v. State, 507 So.2d 89 (Miss.1987), we explored the reasoning behind our deference and stated that, as a matter of institutional necessity, we must accord certain leeway to the circuit court. Id. at 93. Moreover, the weighing and balancing task required by Rule 403 is not one susceptible of mechanical performance as- it asks only that a judge rely on his/her own sound judgment. Id. As such, the law gives the trial court discretion. Id.
... Accordingly, while we clearly interpret the rules of evidence as requiring that all otherwise admissible evidence be “filtered” through the balancing test set forth in Rule 403, we do not interpret this requirement to be a regimented procedure that must be explicitly performed on pain of reversal. Though this Court certainly expects trial judges to have considered Rule 403 in making their evidentiary rulings, -we certainly do not predicate the soundness of these determinations on the express use of magic words_It follows that our review depends on the evidence and not the judge, and while a judge’s on-the- *630 record analysis is recommended as it serves to fortify the judge’s position for purposes of review, the lack of such analysis is harmless unless we deem the evidence to be patently prejudicial.
Jones v. State, 920 So.2d 465, 475-76 (Miss.2006). The trial court properly admitted Dr. Boulware’s consultation notes as the probative value was not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. M.R.E. 403.
¶ 21. Finally, the Maries argue that the trial court erred in denying their motion for JNOV. In considering the Ma-ries’ motion for JNOV, the court was bound to consider as true all testimony favorable to the party against whom the request was made.. Both parties presented expert witnesses who came to opposite conclusions on the question of whether Dr. North and Gulfshore Medical Consultants, P.A., were negligent in their medical care and treatment of Marcia Marie. The record reveals ample evidence to support the verdict; therefore, the trial court properly submitted this question of fact to the jury for its determination. See Scafidel v. Crawford, 486 So.2d 370, 374 (Miss.1986); Gee v. Hawkins, 402 So.2d 825 (Miss.1981); Blackwell v. Dairymen, Inc., 369 So.2d 511 (Miss.1979).
¶ 22. We find that the remaining issues raised by the Maries lack merit. •
CONCLUSION
¶23. We find that the trial court did not err in denying the Maries’ motion in limine to exclude entries from Dr. Boul-ware’s clinic notes. The notes were medical records and were properly admitted under either Rule 803(4) or (6) of the Mississippi Rules of Evidence. . Furthermore, we find that the trial court properly denied the Maries’ motion for JNOV, for sufficient evidence supported the jury’s verdict in favor of Dr. North and Gulf-shore Medical Consultants, P.A. Therefore, we affirm the judgment of the trial court.
¶ 24. AFFIRMED.
WALLER, C.J., CHANDLER, PIERCE, AND COLEMAN, JJ., CONCUR. KITCHENS, J., DISSENTS, WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, . P.J., LAMAR AND KING, JJ.

. “Chronic inflammatory demyelinating poly-neuropathy (CIDP) is a rare neurological disorder in which there is inflammation of nerve roots and peripheral nerves and destruction of the fatty protective covering (myelin sheath) over the nerves. This affects how fast the nerve signals are transmitted and leads to loss of nerve fibers. This causes weakness, paralysis and/or impairment in motor function, especially of the arms and legs (limbs).” http://www.webmd.com/brain/chronic-inflammatory-demyelinating-polyneuropathy (last visited October 13, 2015).

."Monoclonal gammopathy of undetermined significance (MGUS) is a condition in which an abnormal protein (monoclonal protein, or M protein) is in the blood. M protein is produced by plasma cells, a type of white blood cell. Monoclonal gammopathy of undetermined significance usually causes no problems. Sometimes, monoclonal gammo-pathy of undetermined significance is, either associated with another disease or can progress over years to other disorders, including some forms of blood cancer." http://www. mayoclinic.org/diseases-conditiops/mgus/ basics/definition/con-20026422 (last visited October 13, 2015).

. "... [S]he is certainly under adequate treat ment at this time

. The Maries did not appeal the trial .court’s denial of their motion in limine as to Dr. Stonnington.